**EXHIBIT 1**

Capitol Corporate Services, Inc.
PO Box 1831
Austin, TX 78767
Phone: (800)345-4647  Fax: (800)432-3622
rassop@capitolservices.com

# Service Of Process Transmittal Notice

| BRYAN SULLIVAN<br>SPECIALIZED LOAN SERVICING LLC<br>8742 LUCENT BLVD STE 300<br>LITTLETON COLORADO 80129 | Date Processed: | 01/30/2018 |
|---|---|---|
| | Completed By: | MICHAEL MIRRIONE |
| | Delivery Method to Client: | FEDEX 2 DAY LETTER |
| | Tracking Number: | 736247243907 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| Date / Time Received<br>01/30/2018  3:00 PM in COLORADO | Transmittal #<br>CO-146576 | Delivered to Agent by<br>PROCESS SERVER |
|---|---|---|

**With Regard to Client**

SPECIALIZED LOAN SERVICING LLC

**Title of Case or Action**

ISIDORA G. CERALDE, ET AL. VS. SPECIALIZED LOAN SERVICING, LLC, ET AL.

| Case Number<br>CGC -18-563830 | Type of Document Served<br>CITATION/SUMMONS |
|---|---|

**Court Name**

SUPERIOR COURT, COUNTY OF SAN FRANCISCO, CA

**Note**



1-146576N

| | SUM-100 |
|---|---|

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

Specialized Loan Servicing, LLC (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

Isidora G. Ceralde, Estrella Reyes De Jesus and Alma D. Pecaoco

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of San Francisco
Civic Center Courthouse, 400 McAllister Street, San Francisco, CA
94102-4515

| CASE NUMBER: |
|---|
| *(Número del Caso):* |
| CGC - 18 - 563830 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark W. Lapham, 751 Diablo Rd., Danville, CA 94526 Tele.: (925) 837 9007

DATE: January 24, 2018          Clerk of the Court          Clerk, by _____ NEYL WEBB _____, Deputy
*(Fecha)* JAN 24 2018          *(Secretario)*          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [XX] on behalf of *(specify):* Specialized Loan Servicing, LLC

under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)          [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)          [ ] CCP 416.90 (authorized person)
[XX] other *(specify):* limited liability company
4. [ ] by personal delivery on *(date):*

BY FAX
ONE LEGAL LLC

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| SHORT TITLE: | | SUM-200(A) |
|---|---|---|
| Ceralde v. Specialized Loan Servicing, LLC et al. | CASE NUMBER: | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

LAW OFFICES OF LES ZIEVE,
HSBC BANK USA, NATIONAL ASSOCIATION as
trustee for the DEUTSCHE ALT-A
SECURITIES MORTGAGE LOAN TRUST
2007-OA4 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-OA4,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. and
DOES 1-100 inclusive,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) (Rev. January 1, 2007)

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Page __1__ of __1__

Page 1 of 1

1   Mark W. Lapham, Esq. (SBN 146352)
**LAW OFFICES OF MARK W. LAPHAM**
2   751 Diablo Rd.
Danville, CA 94526
3   TEL:  (925) 837-9007
FAX: (925) 406-1616
4
Attorneys for Plaintiffs
5   ISIDORA G. CERALDE, ESTRELLA REYES DE JESUS and
ALMA D. PECAOCO
6

7

8

9                        **SUPERIOR COURT OF CALIFORNIA**

10                  **IN AND FOR THE COUNTY OF SAN FRANCISCO**

11

12  ISIDORA G. CERALDE, ESTRELLA   )  Case No.:   **CGC - 1 8 - 5 6 3 8 3 0**
    REYES DE JESUS and ALMA D. PECAOCO )
13                                  )     **COMPLAINT**
        Plaintiffs,                 )
14                                  )
            v.                      )  1. **Wrongful Foreclosure**
15                                  )  2. **Violation of Business & Professions**
    SPECIALIZED LOAN SERVICING, LLC, )     **Code §17200** *et seq.*
16  LAW OFFICES OF LES ZIEVE, HSBC  )  3. **Slander of Title**
    BANK USA, NATIONAL ASSOCIATION as )  4. **Cancellation of Instruments**
17  trustee for the DEUTSCHE ALT-A  )
    SECURITIES MORTGAGE LOAN TRUST  )
18  2007-OA4 MORTGAGE PASS-THROUGH  )
    CERTIFICATES, SERIES 2007-OA4,  )
19  MORTGAGE ELECTRONIC             )
    REGISTRATION SYSTEMS, INC. and  )  **Jury Trial Demanded**
20  DOES 1-100 inclusive,           )
                                    )
21      Defendants.                 )     **BY FAX**
                                    )     ONE LEGAL LLC
22                                  )
    ─────────────────────────────────
23      Isidora G. Ceralde, Estrella Reyes De Jesus and Alma D. Pecaoco (hereinafter "Plaintiffs")

24  sue Specialized Loan Servicing, LLC, Law Offices of Les Zieve, HSBC Bank USA, National

25  Association as trustee for the Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4 Mortgage

26  Pass-through Certificates, Series 2007-OA4 and Mortgage Electronic Registration Systems, Inc.

27  (collectively "Defendants") for Wrongful Foreclosure, Slander of Title, Cancellation of Instruments

28  and Violation of Business & Professions Code §17200 *et seq.*.

*Ceralde v Specialized  Loan Servicing, LLC, et al.*                COMPLAINT

## A. NAMED PARTIES AND JURISDICTION

1. Plaintiffs owned a single-family property located at 1276 Geneva Avenue, San Francisco, San Francisco County, California 94112 (hereinafter "Property" or "Subject Property").

2. Defendant Specialized Loan Servicing, LLC (hereinafter "SLS") is a limited liability company with its main office located in Littleton, Colorado.  SLS is a third party servicer of residential mortgages.

3. Defendant Law Offices of Les Zieve (hereinafter "Les Zieve") provide mortgage loan default services to mortgage loan servicers and financial institutions in the Western United States. The Law Offices of Les Zieve maintain offices at 30 Corporate Park, Suite 450, Irvine, California 92606.

4. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is organized and existing under the laws of the State of Delaware. MERS' principal place of business is located at 1818 Library Street, Reston, VA 20190. Therefore, MERS is a citizen of Delaware and Virginia. MERS tracks the ownership interests and servicing rights in mortgage loans and holds title to mortgages solely as a nominee for the banks which subscribe to its services and which are the true beneficial owners of the mortgage loans.

5. Defendant HSBC Bank USA, National Association (" HSBC"), the American subsidiary of UK based HSBC Holdings, is a national bank with headquarters located at 452 5th Avenue, New York, N.Y.  10018. HSBC's national charter lists its main office as located in McLean, Virginia. HSBC is sued solely in its capacity as trustee of the above-captioned MBS trust.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued under fictitious names Does 1-100, inclusive, and will amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiffs are informed and believe and thereon allege that each of said fictitiously named Defendants is responsible in some manner for the acts complained of herein.

8. Venue of this action is proper in this county as the residential real property which is the subject of this action is situated in San Francisco County, California, and the acts complained of occurred in San Francisco, California.

## B. MATERIAL FACTS COMMON TO ALL COUNTS

9. On April 27, 2007, Plaintiff Alma Pecaoco and Estrella Reyes De Jesus executed an adjustable rate mortgage relating to the Subject Property which consists of a Deed of Trust ("DOT") and Adjustable Rate Pay Option Note (12-month MTA). The DOT identifies Countrywide Bank, FSB as the lender, Defendant MERS as the nominal beneficiary and Recontrust Company, N.A. as the trustee. A true and correct copy of the DOT and Adjustable Rate Pay Option Note are attached hereto as **Exhibit "A"** and incorporated by reference as though fully set forth herein.

10. Plaintiffs allege that Note identifies Countrywide Bank as payee and that any transfers of the Note require a valid, legal indorsement and physical transfer of the Note. *See* UCC §§1-201(20), 3-201, 3-203 and 3-205(a) and (b).

11. Plaintiffs allege that the Note does not contain an indorsement to any other entity nor was the Note transferred to any other entity.

12. The original loan servicer was Countrywide Home Loans Servicing, LP. BAC Home Loans Servicing, LP subsequently became the purported loan servicer as successor to Countrywide Home Loans Servicing. Bank of America then became servicer as successor by merger to BAC. Defendant Specialized Loan Servicing, LLC held itself as the servicer of Plaintiffs' mortgage loan at the time of the wrongful foreclosure.

13. On or before June 29, 2007, Countrywide sold Plaintiffs' mortgage loan to DB Structured Products, Inc., the Sponsor in a securitization transaction identified as the Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4 Mortgage Pass-through Certificates, Series 2007-OA4 ("DBALT 2007-OA4"), a mortgage-backed securities trust. Defendant HSBC serves as trustee for the Trust. Plaintiffs' mortgage loan is currently represented as part of the trust fund under original Loan Number 0115792315. *See* true and correct copies of relevant screenshots from the ABSNET database attached hereto as **Exhibit "B"** and incorporated by reference as though fully set forth herein. The sale of the subject mortgage loan, for full loan value, extinguished all interest in the mortgage formerly held by Countrywide and MERS, its nominee.

14. The DBALT 2007-OA4 is a Special Purpose Vehicle formed as a mortgage-backed

1    securities trust in accordance with the Internal Revenue Tax Code of 1986, as amended. Upon

2    election and continuing qualification as a REMIC, the income of the trust, *i.e.*, the scheduled

3    mortgagors' payments, is taxed only at the Certificate Holder's (investor's) level.

4        15. Pursuant to Section 860 of the Internal Revenue Code, in order for an investment entity

5    to qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true and

6    "complete" sale between the parties in order to achieve bankruptcy remoteness. Upon formation of

7    the REMIC-qualified MBS Trust, the Depositor sells the pooled mortgage loans in exchange for the

8    securities certificates issued by the trust. Each step of the "true sale" process must be supported by

9    effective delivery and certification of acceptance of the receiving party of the endorsed mortgage

10   note and assigned deed of trust, reflecting the complete intervening assignments and transfers of

11   each mortgage loan from each assignor to the last assignee.

12       16. The documents governing the securitization, in accordance with the requirements of the

13   Tax Code of 1986, provides that only the Depositor, and no other entity, is permitted to make the

14   final assignment and transfer of each mortgage loan to the REMIC MBS trust, and the assignment

15   must be made as of the Closing Date of the trust (June 29, 2007) to maintain the favorable pass-

16   through tax status of the trust entity.  In addition, only performing qualified mortgage loans which

17   are not in default may be placed into the REMIC MBS trust.  Once the trust owns a mortgage loan,

18   only the trustee of the MBS trust has the authority to foreclose, to appoint an agent to foreclose, to

19   assign the deed of trust or substitute a trustee under the deed of trust.

20       17. The securitization of Plaintiffs' mortgage loan is a transaction designed to comply with the

21   aforementioned requirements of the Tax Code. Specifically, the first "true sale" occurred when DB

22   Structured Products, Inc., securitization Sponsor and Seller, sold the loan to ACE Securities Corp.,

23   the securitization Depositor. Thereafter, ACE Securities Corp. sold the loan to HSBC Bank USA,

24   National Association, the trustee for the Trust.  This was the second true sale. The governing trust

25   documents require that all title to, and interest in, the Subject mortgage loan be sold to HSBC, as

26   trustee for the investors in the REMIC trust. *See, e.g.,* Assignment, Assumption and Recognition

27   Agreement, dated June 29, 2007, filed with the SEC on July 16, 2007 as Form 8-K for July 16,

28   2007, Ex. 99.2 at 2-3. Due to its length the Agreement is not attached hereto but can be viewed in

1    its entirety at http://www.secinfo.com/d13f21.umw.b.htm.

2        18. The foregoing sales were made without the required intervening assignment of Plaintiff's

3    Deed of Trust and endorsement of the Note in contravention of the governing trust documents.

4        19. On September 17, 2007, Grantors Alma Pecaoco and Estrella Reyes De Jesus executed a

5    Grant Deed conveying an undivided one-third interest in the Subject Property to Plaintiff Isidora G.

6    Ceralde. The Grant Deed was recorded on July 7, 2014.  A true and correct copy of the Grant Deed

7    is attached hereto as **Exhibit "C"** and incorporated by reference as though fully set forth herein.

8        20. On or about July, 1, 2008, Bank of America Corporation purchased Countrywide Financial

9    Corporation, a Delaware Corporation and the parent company of Countrywide Home Loans, Inc.

10   ("COUNTRYWIDE"), a New York corporation which was in the business of providing residential

11   mortgage loans. The Subject mortgage loan was not among the assets Bank of America purchased

12   from Countrywide in 2008 as Countrywide sold all of its interest in Plaintiffs' loan in 2007.

13       21. On June 10, 2011, Mary Ann Hiermann, an employee of Recontrust Company, N.A.,

14   signed an Assignment of Deed of Trust purporting to be Assistant Secretary of MERS, which in turn

15   falsely held itself out as the "holder of the Deed of Trust", purporting to assign all beneficial interest

16   in Plaintiffs' Deed of Trust, together with the note, to BAC Home Loans Servicing, LP f/k/a

17   Countrywide Home Loans Servicing, LP ("Assignment 1").  Assignment 1 was recorded on July 7,

18   2011.  A true and correct copy of Assignment 1 is attached hereto as **Exhibit "D"** and incorporated

19   by reference as though fully set forth herein. As MERS no longer held any interest in Plaintiff's

20   mortgage loan, Assignment 1 is null and void.

21       22. Pursuant to public statements made by Hiermann, she is not now, nor has she ever been, an

22   employee of MERS and has never received any remuneration from MERS. Hiermann also failed to

23   disclose in the assignment that she is an employee of Recontrust signing under an alleged agency

24   agreement between her employer and MERS. The reason for the non-disclosure is that no such

25   agency agreement exists.

26       23. Plaintiffs allege that Assignment 1 is false and was created by Recontrust at the direction

27   of Bank of America, its real principal, who, in turn, acted on behalf of Defendant HSBC, even

28   though neither HSBC nor Bank of America held any interest in the debt or DOT.

24. This Assignment was executed by MERS which no longer had any valid agency with original lender Countrywide.  Moreover, neither DB Structured Products, Inc., the Sponsor in the securitization process, nor ACE Securities Corp., the securitization Depositor, is a member of the MERS registry.  For this additional reason, MERS exited the chain of title of Plaintiff's mortgage in 2007.  MERS must prove an agency relationship with its principal. *See, e.g., In Re Vargus*, 396 B.R. 511 (Bankr. C.D. Cal. 2008).  MERS has not provided any evidence that it has been appointed the nominal beneficiary by any purported subsequent holder of an interest in Plaintiffs' mortgage. MERS cannot arbitrarily re-assert itself into the chain of title of Plaintiffs' mortgage.

25. Plaintiffs allege that MERS enters into agreements with entities, such as Countrywide, through a contract called a "membership agreement."

26. Plaintiffs allege that pursuant to the terms of the membership agreement and rules of membership, each member is required to have the member's employees appointed by a Corporate Resolution, appointing member's employee as a MERS Assistant Secretary or Assistant Vice President.

27. Plaintiffs allege that pursuant to California law, the appointment by Corporate Resolution is an agency agreement.

28. Plaintiffs allege that none of the Defendants is a legally valid assignee of the debt and, for that reason, Defendants have manufactured false documents that fail to legally transfer the debt.

29. The Assignment is void for the additional reason that MERS never held any interest in the debt, that is, the Note, secured by the deed of trust.  "Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS® System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee." MERS Procedures Manual at 63. MERS Procedure Manual is available for download and inspection from MERS' website at http://www.mersinc.org/MersProducts/manuals.aspx?mpid=1. It is black letter law that assignment of a deed of trust without the debt (Note) is a legal nullity. For all of these reasons, the assignment of Plaintiffs' DOT is null and void.   The beneficial interest in Plaintiffs' mortgage does not automatically revert back to HSBC Bank USA, National Association as trustee for the DBALT

1   2007-OA4. There must be an instrument of reconveyance to vest title in HSBC. Here, there is no

2   such reconveyance instrument.

3        30. On November 23, 2011, Recontrust issued a Notice of Default ("NOD 1") against the

4   Alma Pecaoco and Estrella Reyes De Jesus. The NOD was recorded on November 29, 2011. As the

5   Notice of Default was issued on behalf of BAC Home Loans, an invalid beneficiary, NOD 1 is

6   fatally defective, null and void. A true and correct copy of NOD 1 is attached hereto as **Exhibit**

7   "E" and incorporated by reference as though fully set forth herein.

8        31. On April 5, 2012, Pamela Schneider, an employee of Recontrust, executed a second

9   Assignment of Deed of Trust (Assignment 2) as "Assistant Vice President" of Bank of America,

10   N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans

11   Servicing, LP, purporting to assign all beneficial interest in the Deed of Trust, together with the

12   note, to HSBC Bank USA, National Association, as trustee for the holders of the Deutsche Alt-A

13   Securities, Inc. Mortgage Loan Trust, Mortgage Pass-through Certificates Series 2007-OA4

14   ("Assignment 2"). As Bank of America was an invalid beneficiary, and held no interest in the debt,

15   it held no interest in Plaintiffs' mortgage to convey to anyone in 2012. Therefore, Assignment 2 is

16   null and void. A true and correct copy of Assignment 2 is attached hereto as **Exhibit "F"** and

17   incorporated by reference as though fully set forth herein.

18        32. Moreover, pursuant to public statements made by Schneider, she is not now, nor has she

19   ever been, an employee of MERS in that Schneider has received no remuneration from MERS for

20   the purpose of employment.

21        33. Plaintiffs allege that Schneider failed to disclose that she executed Assignment 2 under an

22   agency agreement between Recontrust, her employer, and Bank of America. The reason for the non-

23   disclosure is that no such agency agreement exists.

24        34. Plaintiffs further allege that HSBC is not now, or ever has been, the holder of the debt

25   (Note), that is, the entity entitled to payment on the loan.

26        35. Plaintiffs allege that HSBC has never advised any party that it purports to be the

27   creditor/lender with respect to the Subject mortgage loan.

28        36. On April 9, 2012, Recontrust recorded a Notice of Trustee's Sale ("NOTS 1") scheduling

*Ceralde v. Specialized Loan Servicing, LLC, et al.*          COMPLAINT       7

1   a foreclosure sale of Plaintiff's property for May 3, 2012. The scheduled sale did not take place. As

2   NOTS 1 was issued pursuant to the invalid NOD and on behalf of HSBC, an invalid beneficiary, it

3   is null and void. A true and correct copy of NOTS 1 is attached hereto as **Exhibit "G"** and

4   incorporated by reference as though fully set forth herein.

5       37. On June 5, 2013, Recontrust recorded a Notice of Rescission of Notice of Default

6   rescinding the NOD recorded on November 29, 2011. A true and correct copy of the Notice of

7   Rescission is attached hereto as **Exhibit "H"** and incorporated by reference as though fully set forth

8   herein.

9       38. On July 31, 2014, Defendant SLS, attorney-in-fact for HSBC Bank USA as trustee for the

10  holders of Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Mortgage Pass-through Certificates

11  Series 2007-OA4, purported to substitute the Law Offices of Les Zieve for Recontrust as trustee

12  under the deed of trust. A true and correct copy of the Substitution of Trustee("SOT") is attached

13  hereto as **Exhibit "I"** and incorporated by reference as though fully set forth herein. As the SOT

14  flows from the illegal and void Assignment 2, it too, is null and void. The assignment was also

15  executed in violation of Cal. Civil Code section 2934a(a)(1)(A) which requires that all (valid)

16  beneficiaries execute and acknowledge a substitution of trustee.

17      39. On July 1, 2014, Grantor Estrella Reyes De Jesus granted her interest in the Subject

18  Property to Plaintiff Ceralde. The Grant Deed was recorded on July 7, 2014. A true and correct

19  copy of the Grant Deed is attached hereto as **Exhibit "J"** and incorporated by reference as though

20  fully set forth herein.

21      40. On July 31, 2014, SLS, on behalf of HSBC, directed the Law Offices of Les Zieve to

22  record a Notice of Default ("NOD 2") against Alma Pecaoco and Estrella Reyes De Jesus. NOD 2

23  was not issued against Plaintiff Isidora G. Ceralde even though Ceralde was an owner of record

24  when the NOD was issued. Attached to NOD 2 is a California Declaration of Compliance with Civil

25  Code section 2923.55(b)(2) executed by Defendant SLS declaring that "[t]the mortgage servicer has

26  contacted the borrower pursuant to California Civil Code section 2923.55(b)(2) to assess the

27  borrower's financial situation and explore options for the borrower to avoid foreclosure. Thirty (30)

28  days, or more, have passed since the initial contact was made." The Declaration identifies Alma

1   Pecaoco and Estrella Reyes De Jesus as the borrowers subject to the notice. In fact, the Declaration

2   is false as neither SLS nor HSBC ever made any attempt to contact any of the Plaintiffs . A true and

3   correct copy of NOD 2 and the accompanying Declaration is attached hereto as **Exhibit "K"** and

4   incorporated by reference as though fully set forth herein.

5        41. Plaintiffs allege that NOD 2 violates ¶22 of the DOT as it fails to notify Plaintiffs of their

6   contractual right to bring forth a legal action challenging the default and any other legal defense to

7   the acceleration of the loan or sale of the property. Paragraph 22 constitutes a condition precedent to

8   enforcement of the Subject mortgage loan.

9        42. NOD 2 is null and void *ab initio* as HSBC held no valid interest in the Subject loan and

10  was without authority to direct its agent, Les Zieve to file the NOD against Pecaoco and De Jesus.

11  Moreover, Les Zieve, similarly, was not validly substituted as foreclosing trustee under the deed of

12  trust and had no authority to file NOD 2. For this additional reason, NOD 2 is fatally defective, null

13  and void.

14       43. On March 19, 2015, the Law Offices of Les Zieve recorded a Notice of Trustee's Sale

15  ("NOTS 2") against the Subject Property.  NOTS 2 identifies Alma Pecaoco and Estrella Reyes De

16  Jesus as the trustors. `The NOTS was not issued against Plaintiff Ceralde nor did Ceralde receive

17  official notice of the foreclosure sale. Ceralde had been accorded the status of a "borrower" and was

18  expressly invited to apply for a modification of the onerous terms of the subject mortgage loan as

19  she contributed to payment of the Subject mortgage loan. In addition, SLS hired National

20  Bankruptcy Services, LLC ('NBS") to negotiate a loan modification with Plaintiff Ceralde in the

21  context of Ceralde's bankruptcy.  In fact, Ceralde had a complete loan modification pending when

22  Defendants conducted the illegal foreclosure sale. *See* letter from NBS to Ceralde, dated July 14,

23  2015, a true and correct copy of which is attached hereto as **Exhibit "L"** and incorporated by

24  reference as though fully set forth herein. A true and correct copy of NOTS 2 is attached hereto as

25  **Exhibit "M"** and incorporated by reference as though fully set forth herein.  As NOTS 2 was issued

26  by an invalid trustee on behalf of an invalid beneficiary, it, like the assignments and foreclosure

27  documents that preceded it, is null and void.

28       44. Les Zieve sold Plaintiffs' property at auction on October 2, 2015 to HSBC, as trustee for

1  Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4 Mortgage Pass-through Certificates,

2  Series 2007-OA4. A Trustee's Deed Upon Sale, memorializing the foreclosure, was recorded on

3  October 18, 2015. As none of the Defendants had the authority to direct or exercise the power of

4  sale under the deed of trust, and as NOTS 2 is null and void, so, too, is the Trustee's Deed Upon

5  Sale. A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as **Exhibit "N"**

6  and incorporated by reference as though fully set forth herein.

7      45. All foreclosure activity by the Defendants against all three Plaintiffs has been conducted

8  by and on behalf of an invalid beneficiary and thus is illegal, null and void. The foreclosure activity

9  against Plaintiff Ceralde is illegal, null and void because none of the Defendants issued a Notice of

10  Default, Declaration of Compliance with Civil Code section 2923.55(b)(2) or Notice of Trustee's

11  Sale to her as required by California's nonjudicial foreclosure statute.

12      46. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with

13  the statute's provisions is required. _Miller v. Cote_ (1982) 127 Cal. App. 3d 888, 894 (a trustee sale

14  based on a statutorily deficient notice of default is invalid). Here, Defendants have committed

15  numerous, egregious violations of the statute.

16  **C. CAUSES OF ACTION**

17  **CAUSE I: WRONGFUL FORECLOSURE**

18  **(Against MERS, SLS, Les Zieve and HSBC)**

19      47. Plaintiffs re-allege and incorporate by this reference the allegations contained in the

20  foregoing paragraphs as though set forth fully herein.

21      48. A trustee is an agent of the beneficiary of a mortgage loan and unlawful conduct of the

22  trustee is imputed to its principal, the beneficiary.

23      49. A trustee has a duty not to conduct an illegal, fraudulent or willfully oppressive sale of

24  property under a power of sale contained in a deed of trust.

25      50. A trustee is also liable to a trustor or mortgagor in California upon the basic principle of

26  tort liability enunciated in Civil Code §1709 that every person is bound by law not to injure the

27  person or property of another or infringe on any of his rights. _See also Munger v. Moore_, (1970) 11

28  Cal. App. 3d 1, 7-8.

51. Defendants have breached their duty to Plaintiffs and that breach is the proximate cause of the damages suffered by the Plaintiffs.

52. The interest in Plaintiff's loan formerly held by MERS and its principal, Countrywide Bank, FSB was extinguished as of June 29, 2007, when Countrywide sold the loan, for full loan value, to DB Structured Products, Inc., the Sponsor in a securitization transaction identified as the DBALT 2007-OA4.  DB Structured Products immediately sold the loan to ACE Securities Corp., the securitization Depositor. Neither the securitization Sponsor nor the securitization Depositor subscribe to the MERS system. MERS must have an agency relationship with all of its principals. MERS had no agency relationship with either DB Structured Products or ACE Securities and, thus, exited the chain of title to the Subject Loan in 2007. Accordingly, MERS had no interest to convey to BAC Home Loans Servicing, LP in 2011. Therefore the 2011 assignment from MERS to BAC is fraudulent, null and void. The Assignment from BAC to HSBC, as trustee for the DBALT 2007-OA4 Trust in 2012 is similarly null and void as BAC never received effective Assignment of the Deed of Trust. Moreover, the Note shows no indorsement of the Note to HSBC or anyone else. Therefore, the Note (debt) was never legally transferred to HSBC. For this additional reason, HSBC lacked authority to direct its agents to conduct the illegal 2015 foreclosure sale of Plaintiffs' property.

53. Les Zieve could not legally exercise the power of sale under the deed of trust for the additional reason that it was substituted by Defendant SLS on behalf of HSBC, an invalid beneficiary. The 2014 Substitution of Trustee violates the provisions of Cal. Civil Code section 2934a (a)(1)(A) which requires that the Substitution be executed and acknowledged by all (valid) beneficiaries.

54. Les Zieve lacked legal authority to conduct the foreclosure sale of Plaintiffs' property for the additional reason that NOD 2 (Exhibit "K") was executed and recorded on behalf of HSBC, an invalid beneficiary, in violation of Cal. Civil Code section 2924(a)(6). In addition, no NOD has ever been issued to Plaintiff Ceralde.

55. Ceralde has been accorded the status of a "borrower" and was expressly invited to apply

1   for a modification of the onerous terms of the subject mortgage loan. In addition, SLS hired National

2   Bankruptcy Services, LLC ("NBS") to negotiate a loan modification with Plaintiff Ceralde in the

3   context of Ceralde's bankruptcy. *See* Exhibit L hereto. Yet she was never provided NOD 2, NOTS 2

4   or otherwise notified of the imminent foreclosure sale and prevented from exercising her

5   constitutional and property rights to save the Subject Property from the auction sale.

6       56. Defendants' egregious violations of California's non-judicial foreclosure statute and

7   common law constitute civil fraud under Cal. Civ. Code sections 1572, 1708, 1709, 1710 and

8   criminally actionable fraud under Cal. Penal Code sections 115 and 532(f)(a). These knowing,

9   blatant violations of law have served to deprive Plaintiffs of their constitutional due process rights

10  guaranteed by the U.S. Constitution and Art. I section 7 of California's Constitution.

11      57. In initiating and pursuing the aforementioned illegal and fraudulent foreclosure

12  proceedings, MERS, SLS, HSBC and Les Zieve have acted with willful oppressiveness and malice

13  toward the Plaintiffs.

14      58. Plaintiffs have suffered damages proximately caused by the illegal and fraudulent

15  foreclosure activities against them by Defendants, including but not limited to, the loss of their real

16  property, relocation expenses, the loss of their down payment on the loan, increased costs and fees

17  assessed against Plaintiff Pecaoco associated with the wrongful foreclosure activities, inability to

18  modify the terms of their negative amortization, adjustable rate mortgage, severe emotional distress,

19  the costs of retaining a forensic mortgage loan auditor and attorney to investigate the fraudulent and

20  otherwise illegal activities of the defendants and damage to their credit.  Plaintiffs are also entitled to

21  and seek punitive damages against MERS, SLS, HSBC and Les Zieve as a result of the illegal,

22  fraudulent and willfully oppressive foreclosure activities against Plaintiffs that defendants personally

23  conducted.

24      **WHEREFORE**, Plaintiffs request judgment in Plaintiffs' favor and an order of the

25  Court:

26      (a) Awarding compensatory damages in an amount to be proved at trial;

27      (b) Emotional distress damages in an amount to be proved at trial; and

28      (c) Punitive damages in an amount sufficient to deter similar conduct on the part of the

1    Defendants in the future.

2

3    **CAUSE II: VIOLATION OF BUSINESS & PROFESSIONS CODE, SECTION 17200**
     *et seq.*

4
     **(Against All Defendants)**

5    59. Plaintiffs re-allege and incorporate by this reference the allegations contained in the

6    foregoing paragraphs as though set forth fully herein.

7    60. California Business and Professions Code §17200 et seq. (also known as the Unfair

8    Competition Law or UCL) prohibits unlawful business practices and acts of unfair

9    competition, which means and includes any "fraudulent business practice" and conduct which is

10   "likely to deceive" and is "fraudulent" within the meaning of §17200.

11   61. As more fully described above, the acts and practices of Defendants are likely to

12   deceive, constituting an unfair business act or practice. *See*, in particular, allegations set forth in

13   Causes I, III and IV.  This conduct is ongoing and continues to this day.

14   62. Specifically, and as set forth with greater particularity in preceding paragraphs, the

15   named Defendants, and each of them, have engaged and are engaging in deceptive business

16   practices with respect to mortgage servicing and foreclosure activity and the mailing of fraudulent

17   foreclosure documents and related matters by, *inter alia*:

18        a.      Executing false and misleading documents, including fabrication of the June,

19   2011 Assignment of Deed of Trust (MERS), the April 5, 2012 Assignment of Deed of Trust

20   (HSBC), Substitution of Trustee (SLS, HSBC), NOD 2 ( SLS, Les Zieve),the March, 2015 NOTS

21   (Les Zieve, SLS, HSBC) and the October, 2015 Trustee's Deed Upon Sale (Les Zieve, HSBC).

22        b.      Executing documents without the legal authority to do so (MERS, SLS, HSBC

23   and Les Zieve);

24        c.      Acting as beneficiaries and trustees without the legal authority to do so (MERS,

25   HSBC (beneficiaries) and Les Zieve (trustee);

26        d.      Failing to comply with California Civil Code §§ 1708 and1709 (HSBC, SLS and

27   Les Zieve);

28        e.      Violating provisions of the non-judicial foreclosure statute set forth at California

1    Civil Code §§ 2923,55(b((2), 2924(a)(1),2924(a)(6) and 2934a ( HSBC, SLS and Les Zieve);

2                f.    Violating the due process provisions of the United States Constitution and Article

3    I, section 7 of the California Constitution (all Defendants);

4                g.    Committing a felony under §115 of the California Penal Code (MERS, HSBC,

5    SLS and Les Zieve);

6                h.    Committing mortgage fraud within the meaning of Cal. Penal Code §532(f)(a)

7    (MERS, HSBC, SLS and Les Zieve); and

8                i.    Engaging in other deceptive practices, including those which may be uncovered

9    during the course of discovery.

10          63. Plaintiffs allege that the named Defendants' misconduct, as alleged herein, gave, and has

11   given, Defendants, and each of them, an unfair competitive advantage over their competitors.

12   Specifically, defendants have engaged in a scheme to defraud the Plaintiffs and have committed

13   numerous material violations of the non-judicial foreclosure statute in order to illegally take

14   Plaintiffs' property. Presumably, other members of the banking industry are following the

15   requirements of the non-judicial foreclosure statute and other statutory and common laws in their

16   foreclosure proceedings.  The scheme implemented by Defendants, in collusion with one another, is

17   specifically designed to defraud California consumers and enrich Defendants at the expense of

18   consumers in this State.

19          64. By reason of the foregoing, Defendants should be enjoined from continuing such

20   practices pursuant to California Business & Professions Code §§17203 and 17204.  Plaintiffs have

21   suffered injury- in- fact, including but not limited to, the loss of their home, relocation expenses,

22   severe emotional distress, inability to modify the terms of their negative amortization, adjustable

23   rate mortgage, damage to their creditworthiness and monies paid to these defendants which have no

24   right to collect mortgage payments from Plaintiffs. In addition, Defendants HSBC and SLS have

25   assessed costs and fees against Plaintiff Pecaoca associated with the wrongful collection and

26   foreclosure activities of the defendants. Undoubtedly, other members of the public, similarly have

27   fallen victim to Defendants' deceptive schemes, are likely to be injured as well.

28          65. The harm to Plaintiffs and to members of the general public outweighs the utility (if any)

*Ceralde v. Specialized Loan Servicing, LLC, et al.*                    COMPLAINT                    14

1   of Defendants' policies and practices. Consequently, their policies and practices constitute unlawful

2   business acts or practices within the meaning of Business & Professions Code §17200. Moreover,

3   the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or

4   spirit of such law or otherwise significantly threatens or harms competition.

5       66. Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under

6   Business & Professions Code §17200 *et seq.* and related sections and under any California private

7   attorney general statutes. The acts and practices described in the foregoing paragraphs are unfair and

8   violate the Business & Professions Code because they constitute violations of all the statutes

9   previously listed above.

10      **WHEREFORE, Plaintiffs pray the Court for an Order and Decree that:**

11          a.    Pursuant to Business & Professions Code §17203, all of the Defendants, their

12  successors, agents and assigns, representatives, employees, and all persons who act in concert with

13  them, are permanently enjoined from committing all acts of unfair competition in violation of

14  §17200 including, but not limited to, the violations identified in Cause I of Plaintiffs' Complaint;

15          b.    HSBC and its agents are enjoined from transferring the Subject Property to a bona

16  fide purchaser;

17          c.    HSBC must execute a deed of reconveyance transferring title to the Plaintiffs;

18          d.    Plaintiffs are entitled to an award of statutory attorney's fees;

19          e.    Plaintiffs are entitled to statutory damages including damages available under

20  relevant private attorney general statutes, including CCP 1021.5;

21          f.    Plaintiffs are entitled to injunctive relief;

22          g.    Plaintiffs are entitled to the cost of suit; and

23          h.    Any other relief the Court deems just and proper.

24

25                      **CAUSE III: SLANDER OF TITLE**

26                          **(Against All Defendants)**

27      67. Plaintiffs reallege all preceding allegations and incorporate them by this reference as

28  though fully set forth herein.

*Ceralde v. Specialized Loan Servicing, LLC, et al.*          COMPLAINT                    15

68. The elements of the tort of Slander of Title traditionally have been held to be publication, falsity, absence of privilege and disparagement of another's land which is relied on by a third party and which results in pecuniary loss.

69. Plaintiffs allege that Assignments 1 and 2 (Exs. D and F), the SOT (Ex. I), NOD 2 (Ex. K), NOTS 2 (Ex. M) and the Trustee's Deed Upon Sale (Ex. N) are not valid notices under the nonjudicial foreclosure statute and are not subject to the qualified privilege afforded by Cal. Civil Code §47.

70. As explained with particularity above, the documents identified in foregoing Paragraph 69 are void by operation of law and constitute a cloud on Plaintiffs' title.

71. Plaintiffs allege that Defendants knew that the statements made in these documents are false and intended for Plaintiffs to rely upon them for their truthfulness.

72. Plaintiffs allege that Defendants knew that the statements made within the Trustee's Deed Upon Sale are false and intended to have Plaintiffs, the courts and the public rely upon the false statements made therein; most specifically, the deliberate misrepresentation that title has been validly transferred from the Plaintiffs. This instrument is void and was executed and recorded specifically to deprive Plaintiffs of their valid title and, therefore, constitutes a cloud upon Plaintiffs' good title.

73. The false statements described in Paragraphs 21-29, 31-35, 38, 40-42 and 43-44, were made with malicious intent by Hiermann at the direction of MERS and HSBC (Exhibit "D"), by Pamela Schneider at the direction of MERS and HSBC (Exhibit "F"), by Les Zieve in collusion with HSBC (Exhibit "I"), by Les Zieve in collusion with SLS and HSBC (Exhibit "K"), by Les Zieve in collusion with HSBC and SLS ( Exhibit "M") and by Les Zieve in collusion with HSBC and SLS ((Exhibit "N") for the purpose of initiating and comsummating illegal foreclosure activity against the Plaintiffs. "Malice" is established by showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. *Kachlon v. Markowitz* (2008) 168 Cal. App. 4th 316, 336.

74. These false statements were published with malicious intent and without any justification whatsoever.  Therefore, they are not privileged.

75. The assignments and foreclosure documents identified in Paragraph 69, above, constitute a cloud on Plaintiffs' valid title in that they represent that Defendants had and have a valid interest in Plaintiffs' mortgage loan therein whereas, in fact, each of them was, and HSBC remains, a stranger to the loan.

76. Plaintiffs have suffered direct pecuniary loss as Plaintiffs lost title to and possession of their real Property. Plaintiffs incurred relocation expenses. In addition, Plaintiffs were required to pay the fees to their forensic loan auditor and attorneys to uncover the fraudulent and illegal conduct of the Defendants.

**WHEREFORE, Plaintiffs pray for judgment against the Defendants and each of them as hereinafter set forth.**

## CAUSE IV: CANCELLATION OF INSTRUMENTS

### (Against All Defendants)

77. Plaintiffs reaffirm all preceding allegations and incorporate them by this reference as though fully set forth herein.

78. Plaintiffs allege that the written instruments created, published and recorded by the Defendants herein are void as to them and if left outstanding, will cause serious injury to Plaintiffs. *See* Cal. Civil Code §3412. Plaintiffs therefore request this Court to adjudge and order Defendants to deliver up Assignments of Deed of Trust 1 and 2 ( Exhibits "D" and "F"), the Substitution of Trustee ( Exhibit "I"), NOD 2 (Exhibit "K"), NOTS 2 (Exhibit "M") and Trustee's Deed Upon Sale ( Exhibit "N") so that they may be canceled, or in the alternative, to declare these documents to be without force and effect and further to instruct the clerk of the Court to sign a Deed of Reconveyance so that the cloud on Plaintiffs' property may be removed. These documents appear on their face to be valid land records.

79. The Court may order cancellation of an invalid written instrument that is void or voidable.

80. Assignments 1 and 2 are void by operation of California law as both seek to transfer the beneficial interest in the security but neither MERS, BAC nor HSBC held any right, interest or authority to transfer the interest in the DOT.

81. As explained with particularity, above, the assignments are void for the additional reason

1  that they falsely allege that the Note is being transferred but neither MERS, BAC nor HSBC held

2  any right, interest or authority to transfer the Note as evidenced by the lack of indorsements

3  establishing transfer of ownership of the debt.

4    82. MERS held no legal authority pursuant to the Membership Agreement to transfer any

5  interest in the Note or DOT.

6    83. Assignment 1 is void for the reason that Hiermann failed to disclose that she is a

7  Recontrust employee and that she is acting under an agency agreement with MERS.

8    84. Assignment 2 is void because Bank of America held no interest in Plaintiffs mortgage loan

9  to transfer to any entity.

10    85. Assignments 1 and 2 are illegal, void and of no force and effect due to the

11  misrepresentations detailed above.

12    86. The Trustee's Deed Upon Sale materially misrepresents that HSBC is a valid grantee and

13  foreclosing beneficiary based on self-to-self assignments which are void under California law.

14    87. Plaintiffs allege that NOD 2 is illegal, void and of no force and effect as explained above.

15    88. The disputed NOD 2 was not executed on behalf of the beneficial holder as required in the

16  DOT and violates Civil Code §2924(a)(1)(C).

17    89. NOD 2 was issued in violation of ¶22 of the DOT which constitutes a condition precedent

18  to enforcement of the DOT.

19    90. SLS failed to meet the requirements of the nonjudicial foreclosure statute by failing to

20  contact all Plaintiffs to explore foreclosure alternatives.  Plaintiffs allege this because SLS does not

21  represent the true lender and has no authority to offer a foreclosure alternative.

22    91. Plaintiffs allege that the declaration attached to NOD 2 contains hearsay statements that

23  are false and that Daniel Leon has no personal knowledge to support his declaration.

24    92. Due to violations of California law, the NOD is statutorily deficient and, if left

25  outstanding, will continue to allow parties with no financial or legal interest in the debt to benefit

26  from the wrongful foreclosure and Plaintiffs will continue to incur additional costs and attorney fees

27  defending against wrongful parties seeking to abuse said documents.

28    93. Due to the violations of law, the SOT could not validly substitute the Law Offices of Les

---

*Ceralde v. Specialized Loan Servicing, LLC, et al.*          COMPLAINT                    18

Zieve, and if left outstanding, the law Offices of Les Zieve will improperly continue to act as the trustee under the DOT on behalf of HSBC which has no rights or interest in the loan or authority to retain mortgage payments collected from the Plaintiffs and had no authority to pursue foreclosure against the Plaintiffs. Additionally, Plaintiffs will continue to incur attorney's fees and costs defending against wrongful parties who may further seek to deprive them of their real property.

94. The Trustee's Deed Upon Sale is void because it identifies the wrong trustee and wrong beneficiary.

95. Assignments 1 and 2, the SOT, NOD 2 NOTS 2 and Trustee's Deed Upon Sale, constitute a cloud on Plaintiffs' title and, if left outstanding, will continue to allow parties having no financial or legal interest in the debt to benefit from the wrongful foreclosure while Plaintiffs are forced to incur additional costs and attorney's fees to vindicate their constitutional and property rights.

**WHEREFORE, Plaintiffs pray for judgment as set forth herein.**

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment against the Defendants and each of them as set forth below:**

1. For an order forever enjoining the defendants, and each of them, their agents, representatives, successors and assigns, from transferring any interest in the Subject Property to a bona fide purchaser;

2. For a finding and determination that Plaintiffs are the rightful holder of the title to the Property and that Defendants herein, and each of them, have no estate, right, title, lien or interest in said Property;

3. For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title, lien or interest in the Subject Property;

4. For a judgment that not one of the Defendants has any unencumbered legal interest in both the NOTE and DOT;

5.    Plaintiffs further pray that the Court issue an Order and Decree canceling the Assignments of Deed of Trust (Exhibits "D" and "F"),  the  Substitution of Trustee (Exhibit "I"), Notice of Default 2 (Exhibit "K") and the Notice of Trustee's Sale 2 (Exhibit "M") and Trustee's Deed Upon Sale (Exhibit "N") finding same void as to Plaintiffs and that the Court instruct the clerk to execute a full deed of reconveyance of the Deed of Trust in favor of Plaintiffs.

6.    For a finding that Defendant SLS is in violation of Cal. Civil Code section 2923.55(b)(2);

7.    For general, consequential and special damages according to proof;

8.    For emotional distress damages;

9.    For restitution of all mortgage payments collected from Plaintiffs on behalf of invalid beneficiaries;

10.    For punitive damages in an amount sufficient to deter the malicious conduct set forth with particularity in Causes I, III and IV of this Complaint in the future;

11.    For reasonable attorney's fees;

12.    For costs of suit herein; and

13.    For such other and further relief as the court deems just and proper.

LAW OFFICES OF MARK W. LAPHAM

Dated: January 24, 2018

By: *Mark W. Lapham*
Mark W. Lapham
Attorney for Plaintiffs
ISIDORA G. CERALDE, ESTRELLA REYES DE
JESUS and ALMA D. PECAOCO

EXHIBIT A

Commonwealth Land Title

**EXHIBIT "B"**

Recording Requested By: #57100294
M. MCLAURIN

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2007-I382862-00
Acct 2-COMMONWEALTH Title Company
Wednesday, MAY 09, 2007 08:00:00
Ttl Pd $78.00      Nbr-0003227610
REEL J387 IMAGE 0046
                   ofa/FT/1-24

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JAIME ENRILE

341644

[Space Above This Line For Recording Data]

57100294
(Escrow/Closing #)

00016777470704007
(Doc ID #)

# DEED OF TRUST

MIN 1001337-0002134743-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 27, 2007      , together with all Riders to this document.
(B) "Borrower" is
ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN, /AND /AS /JOINT /TENANTS

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 18
-6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291
CONV/VA

Form 3005 1/01





DOC ID #: 00016777470704007

Borrower's address is
901 ATHENS STREET,, SAN FRANCISCO, CA 94112
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated APRIL 27, 2007 . The Note states that Borrower owes Lender
SIX HUNDRED FOUR THOUSAND and 00/100

Dollars (U.S. $ 604,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 01, 2047
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property,"
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00016777470704007

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY            of            SAN FRANCISCO            :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: LOT 34; BLOCK 6414                                which currently has the address of
1276 GENEVA AVE, SAN FRANCISCO
[Street/City]
California 94112-3824 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (08/05)          Page 3 of 16                              Form 3005 1/01

DOC ID #: 0001677747070400 7

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00016777470704007

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 0001677747070400 7

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00016777470704007

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 0001677747 0704007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 00016777470704007

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00016777470704007

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00016777470704007

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (08/05)          Page 11 of 16          Form 3005  1/01

DOC ID #: 00016777470704007

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00016777470704007

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

DOC ID #: 00036277470704007

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00016777470704007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Alma A. Pecaoco_ _____ (Seal)
ALMA PECAOCO                                              -Borrower

_Estrella Reyes de Jesus_ _____ (Seal)
ESTRELLA REYES DE JESUS                                  -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

-6A(CA) (0207)        CHL (08/05)         Page 15 of 16                    Form 3005 1/01

STATE OF CALIFORNIA
COUNTY OF _San Mateo_          } SS:

On _May 3, 2007_ before me, _Richard F. Lechleitner_,
a Notary Public, personally appeared _Estrella Reyes De Jesus_

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose names is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Signature of Notary Public_

RICHARD F. LECHLEITNER
Commission # 1646979
Notary Public - California
San Mateo County
My Comm. Expires Mar 9, 2010

(This area for official notarial seal)

State of California
County of *SAN MATEO*

DOC ID #: 00016706248204007

} ss.

On *APRIL 27 2007* before me, *MARIA TERESA M. FORMOSO*
*NOTARY PUBLIC*                                    personally appeared

*ALMA TECAOCO*

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Maria Teresa M. Formoso* (Seal)

File No: 57100294

# Exhibit "A"

All that certain real property situated in the County of San Francisco, State of California, described as follows:

(City of San Francisco)

Lot No. 15 in Block No. 16, as said Lot and Block area laid down and delineated upon that certain Map entitled, Map of THE CROCKER AMAZON TRACT, San Francisco County, California", filed October 23, 1912, recorded in Liber "G" of Maps, at Pages 84 and 85, in the Office of the Recorder of the City and County of San Francisco, State of California.

Assessor's Parcel Number        **Lot 34 Block 6414**

# MONTHLY ADJUSTABLE RATE PAYOPTION RIDER
### (MTA Twelve Month Average Index - Payment Caps)

57100294
[Escrow/Closing #]

167774707
[Loan #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of APRIL, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3824
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

2.  **INTEREST**
    **(A) Interest Rate**
    Interest will be charged on unpaid Principal until the full amount has been paid. I will initially pay interest at a yearly rate of 8.375 %. This is my initial interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

● PayOption MTA Rider - No Intro Period
1E627-XX (10/05)(d/i)

Page 1 of 6





LOAN #: 167774707

The interest rate used to calculate the initial Minimum Payment described in Section 3 is
1.250 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

**(B)  Interest Rate Change Dates**

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index". .

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 35/100                    percentage point(s)        3.350  (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than     9.950 % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the FIRST                  day of each month beginning on June, 2007                        . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MAY 01, 2047               , I still owe amounts under this Note, I will pay those amounts

LOAN #: 167774707

in full on that date, which is called the "Maturity Date." I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. Each of my initial Minimum Payments until the first Payment Change Date will be in the amount of U.S. $ 1,599.67               , unless adjusted under Section 3(F). If the Minimum Payment is not sufficient to cover the amount of the interest due, negative amortization will occur.

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first                day of JUNE, 2008                , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than   7.500% of my prior monthly payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum Payment due the month preceding the Payment Change Date by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the Payment Cap described in Section 3(D), my Minimum Payment could be insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal.

● PayOption MTA Rider ● No Intro Period
1E627-XX (10/06)                    Page 3 of 5

**LOAN #: 167774707**

Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Principal Limit equal to ONE HUNDRED FIFTEEN                   percent (          115 %) of the Principal amount I originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

**(G)  Required Full Payment**

On the tenth                   Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 2(D). The following Payment Options may be provided:

(i)   **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly, the amounts of each of these Payment Options may also change monthly.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**LOAN #: 167774707**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**LOAN #: 167774707**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Monthly Adjustable Rate PayOption Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Alma A. Pecaoco_
ALMA PECAOCO                                                                      -Borrower

_Estrella Reyes De Jesus_
ESTRELLA REYES DE JESUS                                              -Borrower

_____          -Borrower

_____          -Borrower

● PayOption MTA Rider - No Intro Period
1E627-XX (10/06)                              Page 6 of 6

## EXHIBIT "A"

Prepared by: JAIME ENRILE

LOAN #: 167774707

# MONTHLY ADJUSTABLE RATE PAYOPTION NOTE
## (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

**THIS NOTE CONTAINS A PREPAYMENT PENALTY.**

APRIL 27, 2007                     PACIFICA                     CALIFORNIA
   [Date]                           [City]                        [State]

1276 GENEVA AVE, SAN FRANCISCO, CA 94112-3824
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 604,000.00        ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Principal Limit." Lender is Countrywide Bank, FSB.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount has been paid. I will initially pay interest at a yearly rate of 8.375 %. This is my initial interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

The interest rate used to calculate the initial Minimum Payment described in Section 3 is        1.250 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

**(B) Interest Rate Change Dates**

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available

• PayOption MTA No Intro Period Note
1E820-XX (10/06)(d/i)                            Page 1 of 5





LOAN #: 167774707

twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D)   Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE & 35/100   percentage point(s)   3.350  (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than   9.950 % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.   PAYMENTS
(A)   Time and Place of Payments
I will make a payment every month.
I will make my monthly payments on the  first   day of each month beginning on
JUNE 01, 2007   . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MAY 01, 2047  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B)   Amount of My Initial Minimum Payment
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. Each of my initial Minimum Payments until the first Payment Change Date will be in the amount of U.S. $ 1,599.67   , unless adjusted under Section 3(F). If the Minimum Payment is not sufficient to cover the amount of the interest due, negative amortization will occur.

(C)   Payment Change Dates
My monthly payment may change as required by Section 3(D) below beginning on the  first   day of  JUNE, 2008   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D)   Calculation of Monthly Payment Changes
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) applies, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than   7.500% of my prior monthly payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum Payment due the month preceding the Payment Change Date by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the Payment Cap described in Section 3(D), my Minimum Payment could be insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Principal Limit equal to ONE HUNDRED FIFTEEN                  percent ( 115  %) of the Principal amount I originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

**(G)  Required Full Payment**

On the tenth            Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 2(D). The following Payment Options may be provided:

(i)    Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly, the amounts of each of these Payment Options may also change monthly.

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be

LOAN #: 167774707

reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   DOCUMENT CORRECTION

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

• PayOption MTA No Intro Period Note
1E620-XX (10/06)                                    Page 4 of 5

LOAN #: 167774707

**12. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

I agree to the Prepayment Penalty Addendum attached hereto and made a part hereof.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____
ALMA PECAOCO                                           -Borrower


_____
ESTRELLA REYES DE JESUS                                -Borrower


_____
                                                       -Borrower


_____
                                                       -Borrower


* PayOption MTA No Intro Period Note
1E820-XX (10/05)                          Page 5 of 5

# MONTHLY ADJUSTABLE RATE PAYOPTION RIDER
### (MTA Twelve Month Average Index - Payment Caps)

57100294                                  167774707
[Escrow/Closing #]                        [Loan #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH   day of
APRIL, 2007        , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3824
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A: INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

2.   INTEREST
(A)   Interest Rate
Interest will be charged on unpaid Principal until the full amount has been paid. I will initially pay
interest at a yearly rate of      8,375   %. This is my initial interest rate and is the rate for determining
the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month
year and a thirty-day month.

● PayOption MTA Rider - No Intro Period
1E627-XX (10/06)(d/l)                        Page 1 of 6

   

LOAN #: 167774707

The interest rate used to calculate the initial Minimum Payment described in Section 3 is 1.250 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

(B)  Interest Rate Change Dates

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C)  Index

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 35/100 percentage point(s)  3.350  (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point· (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than  9.950 % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  PAYMENTS

(A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on June, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MAY 01, 2047 , I still owe amounts under this Note, I will pay those amounts

◆ PayOption MTA Rider – No Intro Period
1E827-XX (10/06)                                      Page 2 of 5

LOAN #: 167774707

in full on that date, which is called the "Maturity Date." I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment.
Each of my initial Minimum Payments until the first Payment Change Date will be in the amount of
U.S.$ 1,599.67              , unless adjusted under Section 3(F). If the Minimum Payment is not
sufficient to cover the amount of the interest due, negative amortization will occur.

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the
first              day of JUNE, 2008              , and on that day every 12th month
thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at
any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum
Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will
pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as
provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the
monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the
Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate
effective during the month preceding the Payment Change Date. The result of this calculation is called the
"Full Payment." Unless Section 3(F) or 3(G) applies, the amount of my new monthly payment
effective on a Payment Change Date will not increase by more than   7.500% of my prior monthly
payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and
interest payment and does not apply to any escrow payments Lender may require under the Security
Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum
Payment due the month preceding the Payment Change Date by the number   1.075 . The result of
this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a
different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full
Payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the
monthly payment is subject to the Payment Cap described in Section 3(D), my Minimum Payment could be
insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe
at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month
that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my
monthly payment from the amount of the interest due and will add the difference to my unpaid Principal.

**LOAN #: 167774707**

Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

(F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Principal Limit equal to ONE HUNDRED FIFTEEN              percent (       115 %) of the Principal amount I originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

(G)  Required Full Payment

On the tenth              Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H)  Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 2(D). The following Payment Options may be provided:

(i)  Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly, the amounts of each of these Payment Options may also change monthly.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

LOAN #: 167774707

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN #: 167774707

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Monthly Adjustable Rate PayOption Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

ALMA PECAOCO                                                      -Borrower

ESTRELLA REYES DE JESUS                                          -Borrower

_____                 -Borrower

_____                 -Borrower

● PayOption MTA Rider - No Intro Period
1E627-XX (10/05)                    Page 5 of 6

EXHIBIT B

File   Edit   View   Configuration   Zoom   Help

Toolbar

Collateral Analysis   Review Loan Lookup

| | Add Clause | : Remove Clause | Search Loan | |
|---|---|---|---|---|

| Field Name | Comparison | Value(s) | | Tolerance Level |
|---|---|---|---|---|
| Origination Amount | Equals | 604000 | | Exact Match |
| Loan Origination Date | Equals | 4/27/2007 | | Exact Match |
| Maturity Date | Equals | 5/1/2047 | | Exact Match |
| Original Interest Rate | Equals | 3.375 | | Exact Match |
| | | 94112 | | Grand Match |

Select All

| Loan ID | Original Loan Amount | Original Interest R... | Loan Origination... | Maturity Date | ZIP Code | State | Deal Name | | Bloomberg Name |
|---|---|---|---|---|---|---|---|---|---|

Ready

Analyze Selected

asuncion@source@msn.com

---

A05

Balance Tools | Bond Breakdown

As of:   June 2015

| Internal Record ID | Trustee Loan ID | Original Loan Amount | Loan Origination Date | Maturity Date | Original Loan Amount |
|---|---|---|---|---|---|
| 951204329 | 0115793313 | 604,000.00 | 4/27/2007 | 5/1/2047 | 760,000.00 |

| Originator | Servicer | Current Servicer | Originator | Lien Position | Documentation Status |
|---|---|---|---|---|---|
| Countrywide Home Loans, Inc. | BAC HOME LOANS SERVICING, LP | SPECIALIZED LOAN SERVICING LLC | Countrywide | 1 | Low Documentation |

| Occupancy Type | Loan Purpose | Property City | Property State | Property Zip | Property Type |
|---|---|---|---|---|---|
| Owner Occupied | Purchase | San Francisco | CA | 94112 | Single Family Residence |

| Original LTV | Original CLTV | Original Amortization Term | Original Interest Rate | First Payment Date | Prepayment Penalty Term |
|---|---|---|---|---|---|
| 79.50 | 89.41 | 480 | 8.375 | 6/1/2007 | |

| Initial Margin | Margin | Maximum Interest Rate | Payment Adjustment Frequency | Rate Adjustment Frequency | FICO |
|---|---|---|---|---|---|
| MTA 12 Month Avg. | 3.350 | 3.350 | 12 | 1 | 705 |

| Current Interest Rate | Lifetime Interest Rate Cap | Lifetime Maximum Rate | Original Term | Interest Only Term | Remaining Term |
|---|---|---|---|---|---|
| 3.500 | 9.959 | 415% | 480 | 0 | 383 |

| Bloomberg Name | Pool Group ID | Long Issuer Name | Weighted Avg | Weighted Avg |
|---|---|---|---|---|
| DBALT 2007-OA4 | DLT07OA4-1 | Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4 | AAAAAAAAAAAAAAAYFFFFFFFFF86   FFAAAAAAAAAAYFFFFFF86 | |

| Loan Status | Bankruptcy Date | Credit Bureau Entry | Foreclosure Date | Days In Foreclosure | Days In REO |
|---|---|---|---|---|---|
| Bankruptcy | 3/1/2015 | 131 | 6/1/2014 | 893 | |

MERS Original Loan Number: 187224769

---

Third Party Summary for Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4

Gr. 4 Snapshot

| | | S&P | | | Moody's | | | Fitch | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Name | Role | Long Term | Short Term | Watch | Long Term | Short Term | Watch | Long Term | Short Term | Watch |
| Deutsche Alt-A Securities Mortgage Loan Trust | Issuer | | | | | | | | | |
| Deutsche Bank | Underwriter | | | | | | | | | |
| HSBC | Trustee | | | | | | | | | |
| Wells Fargo | Master Servicer | | | | | | | | | |
| Countrywide Home Loans | Servicer | | | | | | | | | |

---

© 2010 -2015 LAWRENCE M. ASUNCION d.b.a. CERTIFIED SECURITIZATION ANALYSIS ✦ All Rights Reserved          Page 26 of 140



**ABSNet** LEWTAN — A Moody's Analytics Company

Moody's Analytics Structured Finance Portal

Moody's Analytics is now offering ABSNet users access to the Structured Finance Portal for data and advanced analytics on all CLO transactions. Please click here for access.

CASH FLOW MODEL NOW AVAILABLE FOR PRE-ISSUANCE DEAL KINGSWOOD MORTGAGES 2015-1 PLC

Home | Surveillance Tools | Deal Screener | Euro Cash Flow Models | Help | Log Out

Deutsche Alt-A Securities Mortgage Loan Trust 2007-OA4

| ABSNet Deal ID: | 61676 | Region: | United States |
| Asset Class/Collateral Type: | RMBS/ALT A | Issuer: | Deutsche Alt-A Securities Mortgage Loan Trust |
| Deal Size: | 2,623,600,100 | Underwriter: | Deutsche Bank |
| Remittance Frequency: | Monthly | Trustee: | HSBC |
| Bloomberg Name: | DBALT 2007-OA4 | Servicer: | Countrywide Home Loans |

**Pool Performance Data**

| Name | Currency | Pool Bal - Original | Pool Bal - End | WAC - Net | WARM | WAI A | CPR - Current | CDR - Current | 30 Day Delq Bal % | 60 Day Delq Bal % | 90 Day Delq Bal % | BK Bal % | FCL Bal % | REO Bal % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group I | USD | | | | | | | | | | | | | |
| Group II | USD | | | | | | | | | | | | | |
| Group III | USD | | | | | | | | | | | | | |
| Total Group | USD | | | | | | | | | | | | | |

**Triggers**

| Category | Result | Limit | Pass/Fail |
|---|---|---|---|

**Capital Structure**

| Name | Currency | ID | Pools | Class Bal - Original | Class Bal - End | Class Factor | Coupon % - Current | Subordination % - Original | Subordination % - Current | S&P | Moody's | Fitch | DBRS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

© 2010 -2015 LAWRENCE M. ASUNCION d.b.a. CERTIFIED SECURITIZATION ANALYSIS ♦ All Rights Reserved

EXHIBIT C

EXHIBIT "C"

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

YSIDORA G. CERALDE
23/1 TAMARACK WAY
SACRAMENTO CA 95821

1276 Geneva Avenue, San Francisco
Lot 34, Block 6414

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC— 2014-J904662-00
Monday, JUL 07, 2014 14:33:55
Ttl Pd   $21.00   Rcpt # 0004957001
                              akc/NF/1-2

Space above this line for Recorder's use

## GRANT DEED

### THE UNDERSIGNED GRANTOR(S) DECLARE(S)

DOCUMENTARY TRANSFER TAX IS $  0          , CITY TAX $
☐ computed on full value of property conveyed, OR
☐ computed on full value less value of liens or encumbrances remaining at time of sale
☐ unincorporated area   ☐ city of ____ ,   AND

**FOR A VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged,

Alma Pecaoco, an unmarried woman and Estrella Reyes De Jesus, an unmarried woman

hereby GRANT(S) to

Alma Pecaoco, an unmarried woman as to an undivided 1/3 interest and Estrella Reyes De Jesus, an unmarried woman as to an undivided 1/3 interest and Isidora G. Ceralde, an unmarried woman as to an undivided 1/3 interest all as Tenants in Common

the following described real property in the city of  San Francisco;  County of  San Francisco
State of California:

See Exhibit A

Dated: 9/15/07

_____
Alma Pecaoco

_____
Estrella Reyes De Jesus

STATE OF CALIFORNIA
COUNTY OF _____ SAN MATEO _____ } SS:

On ____ SEPT. 15 , 2007 ____, before me, MARIA TERESA M. FORMOSO ____, a Notary Public,
personally appeared ____ ALMA PECAOCO AND ESTRELLA REYES DE JESUS _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.
**WITNESS** my hand and official seal.

Signature _Maria Teresa M. Formoso_

MARIA TERESA M. FORMOSO
COMM. 61535804
Notary Public-California
SAN MATEO COUNTY
My Comm. Exp. Dec 17, 2008

(This area for official notarial seal)



**Exhibit A**

All that certain real property situated in the County of San Francisco, State of California, described as follows:

(City of San Francisco)

Lot No. 15 in Block No. 16, as said Lot and Block area laid down and delineated upon that certain Map entitled, Map of THE CROCKER AMAZON TRACT, San Francisco County, California", filed October 23, 1912, recorded in Liber "G" of Maps, at Pages 84 and 85, in the Office of the Recorder of the City and County of San Francisco, State of California.



EXHIBIT D

**EXHIBIT "D"**

Recording Requested By:
Bank of America
Prepared By: Rene Rosales
450 E. Boundary St.
Chapin, SC 29036
888-603-9611
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 28416777470711118

Property Address:
1276 Geneva Ave
San Francisco, CA 94112-3824
CAD-ADT 140808#2          b/9/2011

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2011-J209982-00
Check Number  3713/3718
Thursday, JUL 07, 2011 14:03:37
Ttl Pd  $14.00   Rcpt # 0004178025
REEL K433 IMAGE 0419
                      ata/TD/1-2

MIN #: 1001337-0002134743-3          MERS Phone #: 888-679-6377

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING LP whose address is 9062OLD ANNAPOLISRD, COLUMBIA, MD 21045 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          COUNTRYWIDE BANK, FSB.
Original Borrower(s):     ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE
                          JESUS, AN UNMARRIED WOMAN
Original Trustee:         RECONTRUST COMPANY, N.A
Date of Deed of Trust:    4/27/2007
Original Loan Amount:     $604,000.00

Recorded in San Francisco County, CA on: 5/9/2007, book J387, page 0046 and instrument number 2007-1382862-00

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
06/10/2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: *Mary Ann Hierman*
Mary Ann Hierman, Assistant Secretary

State of California
County of Ventura

On June 19 2011 before me, David J. Mayo, Notary Public, personally appeared Mary Ann Hierman, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: David J. Mayo                                    (Seal)
My Commission Expires: 7/10/2014

Assignments to Deed of Trust
AHMP Recpoco
6/10/11 RWY

DAVID J. MAYO
Commission # 1895116
Notary Public - California
Los Angeles County
My Comm. Expires Jul 10, 2014

EXHIBIT E

50

**EXHIBIT "E"**

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Wally Davidson
TS No. 11-0141926
Title Order No. 110564285

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2011-J308312-00
Check Number 5291
Tuesday, NOV 29, 2011 11:34:55
Ttl Pd  $26.00   Rcpt # 0004287398
REEL K531  IMAGE 0471
.  okc/KC/1-4

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

SITUS: ✱

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $132,326.52, as of 11/23/2011 and will increase until your account becomes current.

   While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2). APN: 6414 - 034

✱ 1276 Geneva Ave.
San Francisco, CA 94112

TS No. 11-0141926

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP
C/O Bank of America, N.A.
400 National Way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 04/27/2007, executed by ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 05/09/2007, as Instrument No. 2007-I382862-00 (or Book J387, Page 0046) of Official Records in the Office of the County Recorder of San Francisco County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 604,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  01/01/2009  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  03/01/2047  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 11-0141926

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: November 23, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary.

NOV 2 3 2011

Wally Davidson, Asst Vice President



Bank of America
Home Loans

**Notice Date:**   September 30, 2011

11-0141926

Alma Pecaaco & Estrella Reyes DE Jesus
1276 Geneva Ave
San Francisco, CA  94112

**Property Address:**
1276 Geneva Ave
San Francisco, CA  94112

## CALIFORNIA DECLARATION

I, Millie Melvin , Mortgage Loan Service Specialist 1 of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank Of America Home Loans

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5; or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

9.30.11   Jacksonville, FL
Date and Place

Millie Melvin
Name of Signor

CA-DECLARATIONS  8638/8569  8/27/2008

EXHIBIT F

**EXHIBIT "F"**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2012-J388862-00
Check Number 2415/62/58
Monday, APR 09, 2012 10:19:33
Ttl Pd $17.00  Rcpt # 0004378554
REEL K621  IMAGE 0531
ofa/FT/1-1

TS No. 11-0141926

1105604285

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE DEUTSCHE
ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2007-OA4

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 04/27/2007, EXECUTED BY:
ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED
WOMAN,TRUSTOR: TO RECONTRUST COMPANY, N.A, TRUSTEE AND RECORDED AS INSTRUMENT NO.
2007-J382862-00 ON 05/09/2007, IN BOOK J387, PAGE 0046, OF OFFICIAL RECORDS IN THE COUNTY
RECORDER'S OFFICE OF SAN FRANCISCO COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED:  April 05, 2012

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME
LOANS SERVICING LP
APR 0 5 2012
BY: Pamela Schneider
PAMELA SCHNEIDER ASST VICE PRESIDENT

State of:  California                    )
County of:  Ventura                      )
On APR 0 5 2012 before me, _____NINOUSH SAMIMI_____, notary public, personally appeared PAMELA SCHNEIDER
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)
NINOUSH SAMIMI

NINOUSH SAMIMI
Commission # 1884483
Notary Public - California
Los Angeles County
My Comm. Expires Mar 28, 2014

*Form asgnmn_2011.11.0_11/2011*

EXHIBIT G

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

TS No. 11-0141926

Title Order No. 110564285

**EXHIBIT "G"**



San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2012-J388863-00
Check Number 2415/82/68
Monday, APR 09, 2012 10:19:56
Ttl Pd     $20.00     Rcpt # 0004378565
REEL K621 IMAGE 0532
                                    oke/FT/1-2

APN No. 38-6414-034-01

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/27/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN, dated 04/27/2007 and recorded 05/09/2007, as Instrument No. 2007-I382862-00, in Book J387, Page 0046 of Official Records in the office of the County Recorder of SAN FRANCISCO County, State of California, will sell on 05/03/2012 at 02:00 PM, At the Van Ness entrance to City Hall, 400 Van Ness Avenue, San Francisco, CA 94101 at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 1276 GENEVA AVE, SAN FRANCISCO, CA 94112-3824. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $805,119.15. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

## NOTICE TO POTENTIAL BIDDERS

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on a property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the lender may hold more than one mortgage or deed of trust on the property.

*Form nos_2012.3.0_03/2012*

TS No. 11-0141926
APN No. 38-6414-034-01

## NOTICE TO PROPERTY OWNER

The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 1-800-281-8219 or visit this Internet Web site www.recontrustco.com, using the file number assigned to this case 11-0141926. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: _Rakisha Richardson_            APR 0 5 2012
                                    Assistant Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

EXHIBIT H

**EXHIBIT "H"**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
ALMA PECAOCO
1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3824

TS No. 11-0141926

Title Order No. 110564285

20139J67612500001
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC-
2013-J676125-00
Acct 2007-LSI Title Company (CA)
Wednesday, JUN 05, 2013 08:17:18
Ttl Pd   $18.00   Rcpt # 0004702383
REEL K911 IMAGE 0407
odm/RE/1-1

APN # 3ξ - 5414 - 034 - 01

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF RESCISSION OF DECLARATION OF DEFAULT
## AND DEMAND FOR SALE AND OF NOTICE OF DEFAULT AND ELECTION TO SELL

NOTICE IS HEREBY GIVEN: That RECONTRUST COMPANY, N.A., is acting as Trustee for the Beneficiary under a DEED OF TRUST dated 04/27/2007, executed by ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded 05/09/2007 as Instrument No. 2007-I382862-00 in Book N/A, Page N/A, of Official Records in the Office of the Recorder of San Francisco County, California describing land therein as more fully described on the above referenced deed of trust.

Said obligations including one note for the sum of $604,000.00.

Whereas, the current beneficiary under that certain Deed of Trust hereinabove described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas notice was heretofore given of the breach of obligations for which said Deed of Trust is security, and of election to cause to be sold the property therein described; and Whereas a Notice of Default and Election to Sell was recorded on 11/29/2011 in the office of the Recorder of San Francisco County, California, Instrument No. 2011-J308312, in Book N/A, Page N/A, of Official Records. 1276 Geneva Ave San Francisco C.A. 94112-3824

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that the current Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Default and Election to Sell; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future--under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Demand for Sale and Notice of Default and Election to Sell had not been made and given.

RECONTRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFICIARY

Dated: June 03, 2013

By: _____
Juan Rodriguez   Assistant Vice President

JUN 0 3 2013

CARESCIND_2013.02.0_02/2013

**EXHIBIT I**

| EXHIBIT "I" |
| --- |

20149J91676400001
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2014-J916764-00
Acct 2007-LSI Title Company (CA)
Thursday, JUL 31, 2014 14:11:56
Ttl Pd   $18.00       Nbr-0004981143
ojt/RE/1-1

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions
Fidelity National Title .

AND WHEN RECORDED MAIL TO:
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

TS No.: 14-28488

## SUBSTITUTION OF TRUSTEE

WHEREAS, ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN was the original Trustor, RECONTRUST COMPANY, N.A was the original Trustee, and COUNTRYWIDE BANK, FSB. as Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 4/27/2007 and recorded on 5/9/2007, as Instrument Number 2007-I382862-00 in book J387 , page 0046 of Official Records of San Francisco County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes LAW OFFICES OF LES ZIEVE, 30 Corporate Park, Suite 450, Irvine, CA 92606 as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: ___JUN 1 8 2014___

HSBC Bank USA, National Association, as Trustee for the Holders of the Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-OA4
By: Specialized Loan Servicing LLC, its attorney in fact

_____
Mark McCloskey
Assistant Vice President

State of ___Colorado___

County of ___Douglas___

On _6/18/14_ before me, ___Dedra Kay Dee___ Notary Public, personally appeared ___Mark McCloskey___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

| DEDRA KAY DEE |
| --- |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| NOTARY ID 20144004254 |
| My Commission Expires January 30, 2018 |

**EXHIBIT J**

**EXHIBIT "J"**

Recording requested by (name):

Isidora G. Ceralde

And when recorded, mail this deed and tax
statements to (name and address):

Isidora G. Ceralde

2311 Tamarack Way

Sacramento, CA 95821

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
**DOC- 2014-J904653-00**
Monday, JUL 07, 2014 14:33:55
Ttl Pd    $21.00    Rcpt # 0004957002
                                okc/NF/1-2

# GRANT DEED

DOCUMENTARY TRANSFER TAX $0
EXEMPTION (R&T CODE) _____
EXPLANATION _____
_____
Signature of Declarant or Agent determining tax

APN: 6414/034

1276 GENEVA AVE    SF

For a valuable consideration, receipt of which is hereby acknowledged,

Estrella de Jesus Reyes
(Current Owner(s), including form of title)

hereby grant(s) to  Isidora G. Ceralde
(New Owner(s))

as _____
(An Unmarried Person / Joint Tenants / Tenants in Common / Community Property / Community Property with Right of Survivorship / etc.)

the following real property in the City of San Francisco _____, County of

San Francisco _____, California: (insert legal description)

Please see attached Exhibit A

Date: July 1, 2014

(Signature of declarant)
Estrella de Jesus Reyes
(Typed or written name of declarant)

Date: _____

(Signature of declarant)
_____
(Typed or written name of declarant)

State of California
County of SAN MATEO

On JULY 01, 2014, before me, CONSTANTE P. LABADON, JR
ESTR_____, a notary public, personally appeared
ESTRELLA REYES _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

**NOTARY SEAL**

CONSTANTE P. LABADON JR
COMM. # 2066284
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. MAY 26, 2018



**Exhibit A**

All that certain real property situated in the County of San Francisco, State of California, described as follows:

(City of San Francisco)

Lot No. 15 in Block No. 16, as said Lot and Block area laid down and delineated upon that certain Map entitled, Map of THE CROCKER AMAZON TRACT, San Francisco County, California", filed October 23, 1912, recorded in Liber "G" of Maps, at Pages 84 and 85, in the Office of the Recorder of the City and County of San Francisco, State of California.

**EXHIBIT K**

**EXHIBIT "K"**

20149J91676500004
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2014-J916765-00
Acct 2007-LSI Title Company (CA)
Thursday, JUL 31, 2014 14:11:56
Ttl Pd    $27.00      Nbr-0004981144
oJl/RE/1-4

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**Law Offices of Les Zieve**
30 Corporate Park, Suite 450
Irvine, CA 92606

TS No.: 14-26488
APN: 38-6414 -034-01
1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3842

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO
BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE
COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE
# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by
paying all of your past due payments plus permitted costs and expenses within the time permitted by law
for reinstatement of your account, which is normally five business days prior to the date set for the sale of
your property. No sale date may be set until approximately 90 days from the date this notice of default may
be recorded (which date of recordation appears on this notice).

This amount is   $237,099.36    as of    7/30/2014   , and will increase until your account becomes
current. While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the
loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order
to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property
taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay. You may not have to pay the entire unpaid portion of your account, even though

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. 14-28488

full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

HSBC Bank USA, National Association, as Trustee for the Holders of the Deutsche Alt-A
Securities, Inc. Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-OA4
C/O Specialized Loan Servicing, LLC
Phone: (800)315-4757
C/O Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606
Phone: 714-848-7920

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale should you wish to do so, providing the sale is concluded prior to the conclusion of the foreclosure.
**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That  LAW OFFICES OF LES ZIEVE is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated  4/27/2007, executed by  ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of COUNTRYWIDE BANK, FSB, as Lender, Mortgage Electronic Registration Systems, Inc. as Beneficiary, recorded 5/9/2007, as Instrument No. 2007-I382862-00, in Book J387, Page 0046,  of Official Records in the Office of the Recorder of  San Francisco County, California describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes  NOTE(S) FOR THE ORIGINAL sum of $604,000.00.  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:
The monthly installment which became due on 1/1/2009, along with late charges, and all subsequent monthly installments.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
TS No. 14-28488

Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY; WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.

Dated: 7/30/2014

LAW OFFICES OF LES ZIEVE, as Trustee

Anthony Tran, Trustee Sale Officer

TS# 14-28488

# CALIFORNIA DECLARATION OF COMPLIANCE
(Civil Code § 2923.55(c))

Borrower(s): ALMA PECAOCO
ESTRELLA REYES DE JESUS
Mortgage Servicer: Specialized Loan Servicing LLC
Property Address: 1276 GENEVA AVE
SAN FRANCISCO
CA 94112

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'borrower' pursuant to California Civil Code subdivision (c) of § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on "owner occupied" residential real property as defined by California Civil Code § 2924.15.

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Date:    **JUN 0 9 2014**

Specialized Loan Servicing LLC, as servicer for HSBC
Bank USA, National Association, as Trustee for the
Holders of the Deutsche Alt-A Securities, Inc. Mortgage
Loan Trust, Mortgage Pass-Through Certificates Series
2007-OA4

By:

Daniel Leon
Second Assistant Vice President

**EXHIBIT  L**

# National Bankruptcy Services, LLC

14841 Dallas Parkway, Suite 300   •   Dallas, Texas 75254   •   (972) 643-6600   •   (972) 643-6698 (Fax)

07/14/2015

**RESPONSE APPRECIATED**

**VIA US MAIL**
Isidora Ceralde
Debtor Pro Se
2311 Tamarack Way
Sacramento, California 95821-5618

| RE: | Debtor(s): | Isidora Ceralde |
|---|---|---|
| | Case No: | 15-23015 |
| | Client: | Specialized Loan Servicing LLC |
| | Client Loan Number: | xxxxxx4406 |
| | Our File Number: | 4125-N-0247 |
| | Property Address: | 1276 Geneva Ave |
| | | San Francisco, California 94112 |

Dear Isidora Ceralde:

   We are the authorized agent for Specialized Loan Servicing LLC ("Client") on the loan referenced above. Our records indicate a possible need for loss mitigation assistance from the borrower(s). We have assigned a Bankruptcy Loss Mitigation Specialist to this account. The Bankruptcy Loss Mitigation Specialist will serve as your single point of contact, and will assist you throughout the bankruptcy loss mitigation process.

   The Bankruptcy Loss Mitigation Specialist is _____ and can be reached at (800) 306-6059.

   Documents can be received via email at crdocs@sls.net or by faxing information to (720) 241-7218. Please include the full loan number or bankruptcy case number on all correspondence.

   The Bankruptcy Loss Mitigation Specialist is responsible for this account throughout the entire Bankruptcy Loss Mitigation process. If they wish to pursue loss mitigation options, please return the Client's form, attorney's consent form and other listed documents.

   The Client offers several alternatives that may provide you financial relief. Such options are listed below:

- **Loan Modification**
- **Short Sale**
- **Deed in Lieu of Foreclosure**

LMSolicitSLS00

4125-N-0247

1

TO     National Bankruptcy Services, LLC

RE:    Client               Specialized Loan Servicing LLC
        Debtors           Isidora Ceralde
        Case No.:       15-23015
        Loan No.:       xxxxxx4406
        Our File No.     4125-N-0247
        Property Address:  1276 Geneva Ave
                         San Francisco, California 94112

By signing below and proceeding with the loss mitigation process, the undersigned hereby agree and further consent to the following:

Please check one:

_____ I hereby authorize agents of your firm and/or agents of Specialized Loan Servicing LLC and/or agents of the servicer of the subject loan to communicate directly with the debtor. Such communications shall be restricted to the subject matter of a workout or loss mitigation alternatives.

_____ Although I am interested in the loss mitigation alternatives, I would prefer that all communications be directed through the attorney's office.

_____ I am not interested in pursuing a loss mitigation alternative.

Please check one:

_____ I hereby authorize Specialized Loan Servicing LLC, upon successful approval of a loan modification, to file for court approval of the loan modification.

_____ Upon successful approval of a loan modification, it is the intent of my client to voluntarily dismiss the bankruptcy.

CONSENTED TO:

Date: _____, 20___

_____
Debtor's Attorney Signature

_____
Debtor

_____
Debtors Phone Number

This letter also outlines the procedures required to begin the process. Although we want to assist, we cannot guarantee that any of the alternatives provided will be approved and effectuated. Further, this letter should not be interpreted as a waiver of the exercise of any of our Client's rights under applicable law.

If you are interested in pursuing one of the alternatives referenced above, please complete the enclosed form. If our office does not receive a response within 30 days of this letter we will close our loss mitigation process. In order to facilitate the process please include the following items with the completed form so that our client may review for approval.

- ☒ Form 1021 Hardship Affidavit - copy attached for completion
- ☒ One month most recent Pay Stubs
- ☒ Two month most recent Bank Statement
- ☐ Copy of most recent utility bill reflecting property
- ☒ A signed and dated 4506T (copy attached) and copy of most recent federal income tax return
- ☐ A contact name and number for a possible appraisal - Our Client may contact if the need for an appraisal of the property arises
- ☒ Signed attorney consent form

Please return the completed enclosure and all additional information to our offices at:

National Bankruptcy Services, LLC
Loss Mitigation Department
14841 Dallas Parkway, Suite 300
Dallas, Texas 75254

If you have any questions or wish to discuss these or any other opportunities, please feel free to give me a call at (800) 306-6059.

Very truly yours,
Bankruptcy Loss Mitigation Specialist

Enclosure

### *Attention*

*Be aware that we expect ongoing mortgage and/or plan payments to be made throughout the negotiation process. We will take all actions permitted by law to protect our Client's rights independent of this offer. We expect that the borrower will assist in obtaining court approval should a loss mitigation alternative be approved, but we cannot guarantee approval.*

### *Special Notice/Consumer Disclosure*

*The following notice is given to you in the event that the Federal Fair Debt Collection Act applies to this communication. This communication is made in an attempt to collect on a debt and any information obtained will be used for that purpose. However, if you are in an active bankruptcy case, not obligated on the debt or if the debt has been discharge in a bankruptcy proceeding and the loan was not reaffirmed in the bankruptcy case, our Client will only exercise its rights against the property and not you personally.*

*Please be advised that National Bankruptcy, LLC is not a law firm, but is a company which handles certain processes and non legal functions for its clients.*

4125-N-0247                                    2                              LMSolicit$LS00

**EXHIBIT M**

EXHIBIT "L"

20159K03557900002
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2015-K035579-00
Acct 2007-LSI Title Company (CA)
Thursday, MAR 19, 2015 12:50:16
Ttl Pd   $21.00      Nbr-0005119892
odm/RE/1-2

[RECORDING REQUESTED BY]
Law Offices of Les Zieve

[WHEN RECORDED MAIL TO:]
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

APN: 38-6414-034-01
Situs: 1276 GENEVA AVE, SAN FRANCISCO, CA 94112-3824

---

T.S. No. 14-28488                   APN: 38-6414-034-01      [SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

## NOTICE OF TRUSTEE'S SALE

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO
BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE
COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/27/2007.  UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state will be held by the duly appointed trustee as shown below, of all
right, title, and interest conveyed to and now held by the trustee in the hereinafter described property
under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or
warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining
principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as
provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges
and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale)
reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN
UNMARRIED WOMAN

Duly Appointed Trustee: LAW OFFICES OF LES ZIEVE  Deed of Trust recorded 5/9/2007 as instrument
No. 2007-I362862-00 in book J387, page 0046  of Official Records in the office of the Recorder of San
Francisco County, California,

Date of Sale:4/15/2015 at 2:00 PM

Place of Sale:      At the Van Ness Ave entrance to the City Hall 400 Van Ness Avenue San Francisco, CA

Estimated amount of unpaid balance and other charges: $901,661.49

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at
the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of
real property:
Described as follows:
  As more fully described on said Deed of Trust.

**1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3824**

A.P.N #.: 38-6414-034-01
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other
common designation, if any, shown above.  If no street address or other common designation is shown,
directions to the location of the property may be obtained by sending a written request to the beneficiary
within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should
understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on
the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free
and clear ownership of the property. You should also be aware that the lien being auctioned off may be a
junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all
liens senior to the lien being auctioned off, before you can receive clear title to the property. You are
encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this
property by contacting the county recorder's office or a title insurance company, either of which may
charge you a fee for this information. If you consult either of these resources, you should be aware that
the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or
more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California
Civil Code. The law requires that information about trustee sale postponements be made available to you
and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale
date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property,
you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file
number assigned to this case 14-28488.  Information about postponements that are very short in duration
or that occur close in time to the scheduled sale may not immediately be reflected in the telephone
information or on the Internet Web site.  The best way to verify postponement information is to attend the
scheduled sale.

Dated:  3/17/2015

Law Offices of Les Zieve, as Trustee
30 Corporate Park, Suite 450
Irvine, CA 92606
For Non-Automated Sale Information, call: (714) 848-7920
For Sale Information: (714) 848-9272   www.elitepostandpub.com

Natalie Franklin, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT
PURPOSE

**EXHIBIT N**



RECORDING REQUESTED BY

AND WHEN RECORDED TO
Specialized Loan Servicing LLC
8742 Lucent Blvd., Ste. 300
Highlands Ranch, CO 80129

Forward Tax Statements to address:
Same as above

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC— 2015-K145624-00
Check Number 5273
Friday, OCT 18, 2015 12:25:48
Ttl Pd   $21.00       Rcpt # 0005247896
                              efa/JL/1-2

[SPACE ABOVE LINE FOR RECORDER'S USE ONLY]

TS # 14-28488

Property Address: 1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3624

Order # 140099734-CA-MAI
APN 38-6414-034-01

## TRUSTEE'S DEED UPON SALE

A P N  38-6414-034-01                    Transfer Tax  $0.00

"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480 3"

The Grantee Herein was The Foreclosing Beneficiary
The Amount of The Unpaid Debt was $911,270.03
The Amount Paid By The Grantee Was $612,000.00
Said Property Is In The City of SAN FRANCISCO, County of San Francisco

LAW OFFICES OF LES ZIEVE, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to HSBC Bank USA, National Association, as Trustee for the Holders of the Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-OA4 (herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of San Francisco, State of CALIFORNIA, described as follows
LOT NO. 15 IN BLOCK NO. 16, AS SAID LOT AND BLOCK AREA LAID DOWN AND DELINEATED UPON THAT CERTAIN MAP ENTITLED, MAP OF THE CROCKER AMAZON TRACT, SAN FRANCISCO COUNTY, CALIFORNIA", FILED OCTOBER 23, 1912, RECORDED IN LIBER "G" OF MAPS, AT PAGES 84 AND 85, IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA.
Property Address 1276 GENEVA AVE
SAN FRANCISCO, CA 94112-3624

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by ALMA PECAOCO, AN UNMARRIED WOMAN, AND ESTRELLA REYES DE JESUS, AN UNMARRIED WOMAN as Trustor, dated 4/27/2007 of the Official Records in the office of the Recorder of San Francisco, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 5/9/2007, instrument number 2007-I382662-00, Book J387, Page 0046 of Official records

**TRUSTEE'S DEED UPON SALE**

TS # 14-28488
Order # 140099734-CA-MAI

Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with   Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 10/2/2015   Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being  **$612,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust

In witness thereof, LAW OFFICES OF LES ZIEVE, as Trustee, has this day, caused its name to be hereunto

Date 10/13/15

LAW OFFICES OF LES ZIEVE

By _____
Dalaysia Ramirez, Trustee Sale Officer

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

THIS INSTRUMENT IS RECORDED AT THE REQUEST OF SERVICELINK AS AN ACCOMMODATION ONLY. IT HAS NOT BEEN EXAMINED AS TO ITS EXECUTION OR AS TO ITS EFFECTS UPON TITLE

State of California
County of Orange

On 10/13/15 before me, Barbara Mackenzie Notary Public personally appeared, Dalaysia Ramirez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

_____
Barbara Mackenzie

(Seal)

BARBARA MACKENZIE
Commission # 1980245
Notary Public - California
Los Angeles County
My Comm  Expires Jun 27, 2016

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mark W. Lapham (SBN 146352)<br>751 Diablo Road<br>Danville, CA 94526<br>TELEPHONE NO.: 925 837 9007  FAX NO.: 925 406 1616<br>ATTORNEY FOR (Name): Isidora G. Ceralde, Estrella R. De Jesus, Alma D. Pecasco | ENDORSED<br>FILED<br>San Francisco County Superior Court<br><br>JAN 2 4 2018<br><br>CLERK OF THE COURT<br>BY:    NEYL WEBB<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street, San Francisco, CA 94102-4515
MAILING ADDRESS: 400 McAllister Street, San Francisco, CA 94102-4515
CITY AND ZIP CODE: San Francisco, CA 94102-4515
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Ceralde v. Specialized Loan Servicing, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CGC-18-563830<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): 4- Wrongful Foreclosure, Violation of Sec 17200, Slander of Title, Can. Inst
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 24, 2018
Mark W. Lapham
_____
(TYPE OR PRINT NAME)

▶ [signature: Mark W. Lapham]
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

BY FAX
ONE LEGAL LLC

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CASE NUMBER: CGC-18-563830  ISIDORA G. CERALDE ET AL VS. SPECIALIZED LOAN SER

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE:    JUN-27-2018

TIME:    10:30AM

PLACE:   Department 610
             400 McAllister Street
             San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**

> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint.  (CRC 3.221(c))

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves.  They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:
- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:
- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet)
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

For more information about ADR programs or dispute resolution alternatives, contact:

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA  94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.

 

# Superior Court of California
## County of San Francisco

HON. JOHN K. STEWART
PRESIDING JUDGE

## Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable Michael I. Begert | The Honorable Harold E. Kahn |
| The Honorable Suzanne R. Bolanos | The Honorable Curtis E.A. Karnow |
| The Honorable Angela Bradstreet | The Honorable Charlene P. Kiesselbach |
| The Honorable Andrew Y.S. Cheng | The Honorable James Robertson, II |
| The Honorable Samuel K. Feng | The Honorable Richard B. Ulmer, Jr. |
| The Honorable Charles F. Haines | The Honorable Mary E. Wiss |

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

03/2015 (ja)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO : <br> ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |
| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |

1) The parties hereby stipulate that this action shall be submitted to the following ADR process:

☐ **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐ **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ Other ADR process (describe) _____

2) The parties agree that the ADR Process shall be completed by (date): _____

3) Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  03/15            STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** <br> *(Check one):*  ☐ UNLIMITED CASE  ☐ LIMITED CASE <br>  (Amount demanded  (Amount demanded is $25,000 <br>  exceeds $25,000)  or less) | CASE NUMBER: |
|---|---|

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: Time: Dept.: Div.: Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. Jury or nonjury trial
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. Trial date
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. Estimated length of trial
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. Trial representation *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:    f. Fax number:
e. E-mail address:    g. Party represented:
☐ Additional representation is described in Attachment 8.

9. Preference
☐ This case is entitled to preference *(specify code section):*

10. Alternative dispute resolution (ADR)
a. ADR information package. Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
    (1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
    (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
b. Referral to judicial arbitration or civil action mediation (if available).
    (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
    (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form are willing to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____       ▶ _____
(TYPE OR PRINT NAME)       (SIGNATURE OF PARTY OR ATTORNEY)

_____       ▶ _____
(TYPE OR PRINT NAME)       (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



# Superior Court of California
# County of San Francisco

**Expedited Jury Trial Information Sheet**

### What is an expedited jury trial?

An expedited jury trial is a trial that is much faster and has a smaller jury than a traditional jury trial. An expedited jury trial differs from a regular jury trial in several ways:

- **The trial will be shorter.** Each side has 3 hours to make opening statements, present witnesses and evidence, and make closing statements.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer preemptory challenges.

- **Parties will waive some post trial motions and rights to appeal.** Appeals are allowed only if there is: (1) Misconduct of the judicial officer that materially affected substantial rights of a party; (2) Jury misconduct; or (3) Corruption or fraud or some other bad act that prevented a fair trial.

  In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.

### Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### Is the decision of the jury binding on the parties?

Generally, yes. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. However, parties who take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also impose a cap, or maximum, on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are commonly known as "high/low agreements."

### How do I qualify for an expedited jury trial?

The process can be used in any civil case. To have an expedited jury trial, both sides must want one. Each side must agree that it will use only three hours to put on its case and agree to the other rules described above. This agreement must be put in writing in a Stipulation and submitted along with a Proposed Consent Order Granting an Expedited Jury Trial, which is given to the court for approval. The court will usually agree to the Consent Order.

### How do I request an expedited jury trial?

To have an expedited jury trial, both sides must submit a Stipulation and Proposed Consent Order for Expedited Jury Trial to the court for approval. This may happen at three stages of litigation:

1) **At Filing and Prior to Setting of a Trial Date:** Parties may submit a Stipulation to Expedited Jury Trial to Dept. 610 using the attached short form (see below). Parties must

also submit a Proposed Consent Order for Expedited Jury Trial to Dept. 610.

2) **After a Trial Date has been Set:** Parties submit a Stipulation and Proposed Consent Order for Expedited Jury Trial directly to Dept. 206 at least *30 days* prior to the assigned trial date.

3) **After Trial Assignment:** A Proposed Consent Order for Expedited Jury Trial may be submitted immediately to the assigned trial department not less than *30 days* prior to the assigned trial date.

Also, after a case is assigned to a particular judge for trial, the parties may ask the trial judge to have an Expedited Jury Trial, and the judge may permit the parties to then sign the appropriate Stipulation and Proposed Consent Order for Expedited Jury Trial.

**Can I change my mind after agreeing to an expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in an expedited jury trial the agreement is binding on both sides.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Expedited Jury Trial Request**
*Please submit a copy of this request to Dept. 610.*

Case No. _____

Case Name: _____ v. _____

The parties would like this action to be submitted to an Expedited Jury Trial.

The parties shall submit a consent order to the Court on or by _____.

_____     _____     _____
Name of Party                 Name of Party/Attorney        Signature of Party
                                                             Dated: _____

_____     _____     _____
Name of Party                 Name of Party/Attorney        Signature of Party
                                                             Dated: _____

_____     _____     _____
Name of Party                 Name of Party/Attorney        Signature of Party
                                                             Dated: _____

Please note: a [Proposed] Consent Order for Expedited Jury Trial is still required in addition to this stipulation form.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.12 and in rules 3.1545–3.1552 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *www.leginfo.ca.gov/calaw.html*. The rules are at *www.courts.ca.gov/rules*.

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*



## [Wh]at is ESP?

...e Bar Association of San Francisco's [Ea]**rly Settlement Program** (ESP) available as one of San Francisco [Sup]erior Court's Alternative Dispute [Re]solution (ADR) programs (Local Rule ...).

...P is a **highly successful** ADR [pro]gram that handles cases in areas [of] law such as business, personal [inj]ury, employment, labor, civil rights, [dis]crimination, insurance, malpractice, [lan]dlord/tenant, and many others.

...P is **unique** in that the panelists, helping you move toward settlement, [ca]n provide you confidential feedback [ab]out their evaluation of your case, [inc]luding opinions as to potential [ca]se value.

[Fo]r more information as well as the [co]mplete Policies & Procedures, go to: **www.sfbar.org/esp**



## Who are the Panelists?

## Costs

## Contact

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 4 5-782-8905 for a packet to be sent to you.

❶ Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

❷ When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

❸ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card

❹ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

❺ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

❻ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

❼ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

❽ If the matter is settled in your ESP conference, congratulations!

❾ If the matter is not settled in your ESP conference, your initial court date remains the same.

## Experienced mediators are available in the following areas

- Business
- Civil Rights
- Commercial
- Construction
- Contracts
- Disability
- Discrimination
- Education
- Employment/Workplace
- Environmental
- Family
- Family-Certified Specialists
- Fee Disputes
- Financial
- Government
- Insurance
- Intellectual Property
- Intra-Organizational
- Labor
- Landlord/Tenant
- Land Use
- LGBT Issues
- Malpractice: Legal/Medical/Professional
- Partnership Dissolutions
- Personal Injury
- Probate/Trust
- Products Liability
- Real Estate
- Securities
- Taxation
- Uninsured Motorist
- And more...



adr@sfbar.org or
415-982-1600

## TESTIMONIALS

*"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."*

George Yuhas, Esq.
Orrick, Herrington & Sutcliffe LLP

*"We had an excellent experience and, after 8½ hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."*

Robert Charles Friese, Esq.
Shartsis Friese LLP

*"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"*

Leslie Caplan
Global Warming Campaign Manager
Bluewater Network

*"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"*

Mark Abelson, Esq.
Campagnoli, Abelson & Campagnoli

*"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."*

Denise A. Leadbetter, Esq.
Zacks, Utrecht & Leadbetter





THE BAR ASSOCIATION OF
SAN FRANCISCO

PROCEDURES, PODCASTS,
FORMS, MEDIATOR BIOGRAPHIES
AND PHOTOGRAPHS:
www.sfbar.org/mediation

# MEDIATION SERVICES

FOR OUTSTANDING ADR SERVICES
Voted into the Hall of Fame in The Recorder's "Best of" Poll
5 YEARS IN A ROW
2010 – 2014

# QUALITY   ☐ EXPERIENCE   ☐ TRUST

## WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

## HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

## HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

## WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

## OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415.982.1600.

## WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

**EXHIBIT 2**

1   ZIEVE, BRODNAX & STEELE, LLP
    John C. Steele, Bar No. 179875
2   Samantha MacLeod, Bar No. 270770
    30 Corporate Park, Suite 450
3   Irvine, CA  92606
    Telephone:  (714) 848-7920
4   Fax:  (714) 908-2615

5   Attorneys for Defendant
6   LAW OFFICES OF LES ZIEVE

7

8

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**02/06/2018**
Clerk of the Court
BY:KALENE APOLONIO
Deputy Clerk

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

10

### FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 11 ISIDORA G. CERALDE, ESTRELLA<br>12 REYES DE JESUS and ALMA D.<br>PECAOCO,<br>13<br>14          Plaintiffs,<br>15 vs.<br>16 SPECIALIZED LOAN SERVICING,<br>LLC, LAW OFFICES OF LES ZIEVE;<br>17 HSBC BANK USA, NATIONAL<br>ASSOCIATION as trustee for the<br>18 DEUTSCHE ALT-A SECURITIES<br>MORTGAGE LOAN TRUST 2007-<br>19 OA4 MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2007-OA4,<br>20 MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.<br>21 and DOES 1 through 100, inclusive,<br>22<br>23          Defendants. | Case No.: CGC-18-563830<br>Unlimited Jurisdiction<br>Date Action filed: January 24, 2018<br>Trial Date:  None<br><br>**DEFENDANT LAW OFFICES OF<br>LES ZIEVE'S DECLARATION OF<br>NON-MONETARY STATUS** |

24

25   I, Samantha MacLeod hereby declare:

26       1.   I am an attorney with Zieve, Brodnax & Steele, LLP, attorneys of record for

27   Defendant Law Offices of Les Zieve ("LOLZ").  I am a custodian of records for LOLZ.  LOLZ

28   is a defendant in this action, apparently having been sued in its capacity as non-judicial

1

1  foreclosure trustee.  I am competent to testify of my own personal knowledge as to the matters

2  set forth in this Declaration, and if called to testify orally, I believe I could and would do so

3  competently.

4       2.     This action pertains to a Deed of Trust, executed by Alma Pecaoco and Estrella

5  Reyes De Jesus ("Plaintiffs"), as trustors in favor of COUNTRYWIDE BANK, FSB. as Lender,

6  and Mortgage Electronic Registration Systems, Inc., as nominee for lender, which is dated April

7  27, 2007 and was recorded in San Francisco County, California under Document Number 2007-

8  I382862-00 ("DOT").  LOLZ is the current trustee under the DOT by a Substitution of Trustee,

9  recorded on July 31, 2014 in San Francisco County, California under Document Number 2014-

10  J916764-00.

11       3.     It is my belief that LOLZ has been named as a defendant in this case solely in

12  LOLZ's capacity as trustee under the DOT.  Plaintiffs assert causes of action with respect to

13  alleged acts undertaken by LOLZ in the performance of its duties as trustee under the deed of

14  trust. See generally, the Complaint.

15       4.     I am not aware of any acts or omissions on the part of LOLZ or any of LOLZ's

16  officers, employees, or agents in the performance of its duties as trustee that would cause LOLZ

17  to be a defendant in this action.  The only acts undertaken by LOLZ in connection with the deed

18  of trust is the filing and recording of documents in accordance with California Civil Code §

19  2924, *et seq*.  LOLZ simply performed ministerial duties as trustee pursuant to the DOT and the

20  relevant portions of the California Civil Code.  LOLZ performed these acts at the behest of the

21  beneficiary of the deed of trust.  LOLZ has no monetary interest in this matter.

22       5.     LOLZ agrees to be bound by whatever order or judgment is issued by the court

23  regarding the subject deed of trust.

24       I declare under penalty and perjury under the laws of the State of California that the

25  foregoing is true and correct. Executed this 5th day of February, 2018 at Irvine, California.

26

27                                SAMANTHA MACLEOD

28

1

## PROOF OF SERVICE

2          I am over the age of eighteen years and not a party to the within action.  I am
employed by Zieve, Brodnax & Steele, LLP, whose business address is: 30 Corporate
3   Park, Suite 450, Irvine, CA 92606.

4          On February 6, 2018, I served the within document(s) described as:
**DEFENDANT LAW OFFICES OF LES ZIEVE'S DECLARATION OF NON-
5   MONETARY STATUS** on the interested parties in this action:

6   ☐      by transmitting via electronic mail the document(s) listed above to the email
7   addresses provided by counsel.

8   ☒      by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
           ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.
9

| Name & Address | Telephone / Fax / E-mails | Role |
|---|---|---|
| Mark W. Lapham<br>LAW OFFICES OF MARK LAPHAM<br>751 Diablo Road<br>Danville, CA 94526 | Tel:  925-837-9007<br>Fax:  925-406-1616 | *Attorneys for Plaintiffs* |

14  ☒      **BY MAIL** (Code Civ. Proc. § 1013(a))—I deposited such envelope(s) for processing in
           the mailroom in our offices.  I am "readily familiar" with the firm's practice of collection
15         and processing correspondence for mailing.  It is deposited with the U.S. Postal Service
           on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary
16         course of business.  I am aware that on motion of a party served, service is presumed
           invalid if postal cancellation date or postage meter date is more than one day after the
17         date of deposit for mailing in affidavit.

18  ☒      (State) I declare under penalty of perjury under the laws of the State of California that the
19         foregoing is true and correct.

20  Executed on February 6, 2018, at Irvine, California.

21
22                                              BARBARA BIGGINS
23
24
25
26
27
28

PROOF OF SERVICE

**EXHIBIT 3**

CASE NUMBER: CGC-18-563830  ISIDORA G. CERALDE ET AL VS. SPECIALIZED LOAN SER

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **JUN-27-2018** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mark Lapham, 146352<br>Law Offices of Mark W. Lapham<br>751 Diablo Rd.<br>Danville, CA 94526<br>TELEPHONE NO.: (707) 9387754<br>ATTORNEY FOR (Name): Plaintiff | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**01/29/2018**<br>**Clerk of the Court**<br>BY:YOLANDA TABO-RAMII<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
Superior Court of California, San Francisco County
400 McAllister Street
San Francisco, CA 94102

| PLAINTIFF/PETITIONER: ISIDORA G. CERALDE, ET. AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Specialized Loan Servicing, LLC, ET. AL. | CGC-18-563830 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>None |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action. **BY FAX**
2. I served copies of:   Summons, Complaint, Civil Case Cover Sheet, Notice To Plaintiff, ADR Packet

3. a. Party served:  HSBC Bank USA, National Association as trustee for the Deutsche Alt-A Securities
                Mortgage Loan Trust 2007-OA4 Mortgage Pass-Through Certificates, Series 2007-OA4
   b. Person Served: Daisy Montenegro - CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served: 818 West Seventh Street, Suite 930
                                  Los Angeles, CA 90017
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on (date): 01/25/2018        (2) at (time): 3:00PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

HSBC Bank USA, National Association as trustee for the Deutsche Alt-A Securities Mortgage Loan Trust
under: CCP 416.10 (corporation)
7. **Person who served papers**
   a. Name:     Jimmy Lizama
   b. Address:   One Legal - 194-Marin
                504 Redwood Blvd #223
                Novato, CA 94947

   c. Telephone    ■415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
      (3) registered California process server.
         (i) Employee or independent contractor.
         (ii) Registration No.:4553
         (iii) County: Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date: 01/26/2018

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                              (SIGNATURE)

Form Adopted for Mandatory Use                                            Code of Civil Procedure, § 417.10
Judicial Council of California POS-010
[Rev. Jan 1, 2007]                **PROOF OF SERVICE OF SUMMONS**          OL# 11682689

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Mark Lapham, 146352<br>Law Offices of Mark W. Lapham<br>751 Diablo Rd.<br>Danville, CA 94526<br>TELEPHONE NO.: (707) 9387754<br>ATTORNEY FOR *(Name):* Plaintiff | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**02/01/2018**<br>Clerk of the Court<br>BY:EDWARD SANTOS<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, San Francisco County |
| 400 McAllister Street |
| San Francisco, CA 94102 |

| PLAINTIFF/PETITIONER: ISIDORA G. CERALDE, ET. AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Specialized Loan Servicing, LLC, ET. AL. | CGC-18-563830 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Civil Case Cover Sheet, Notice To Plaintiff, ADR Packet

3. a. Party served: Law Offices of Les Zieve

   b. Person Served: LES ZIEVE - Person Authorized to Accept Service of Process

4. Address where the party was served: 30 Corporate Park, 450
   Irvine, CA 92606

5. I served the party
   b. **by substituted service.** On (date): 01/26/2018    at (time): 11:10AM   I left the documents listed in item 2 with or
   in the presence of: Samantha McCloud,Atty.,30s,5'7,150,blond,F.W - Person In Charge Of Office
      (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the
      person to be served. I informed him or her of the general nature of the papers.

      (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:
   Law Offices of Les Zieve

   under:   CCP 416.10 (corporation)

7. Person who served papers
   a. Name:                                              Paul Garcia
   b. Address:        One Legal - 194-Marin
                      504 Redwood Blvd #223
                      Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $   107.15
   e. I am:
      (3) registered California process server.
         (i)  Employee or independent contractor.
         (ii) Registration No. 2012070781
         (iii) County LOS ANGELES

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 01/30/2018

Paul Garcia
_____
(NAME OF PERSON WHO SERVED PAPERS)

*Paul Garcia* (SIGNATURE)

| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

OL# 11682687

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Mark Lapham, 146352<br>Law Offices of Mark W. Lapham<br>751 Diablo Rd.<br>Danville, CA 94526 | | (707) 9387754 | |
| ATTORNEY FOR *(Name):* Plaintiff | Ref. No. or File No.<br>None | | |

Insert name of court, judicial district or branch court, if any:

San Francisco-McAllister
400 McAllister Street
San Francisco, CA 94102

PLAINTIFF:
ISIDORA G. CERALDE, ET. AL.

DEFENDANT:
Specialized Loan Servicing, LLC, ET. AL.

| PROOF OF SERVICE BY MAIL | | | | CASE NUMBER:<br>CGC-18-563830 |
|---|---|---|---|---|

**BY FAX**

I am a citizen of the United States, over the age of 18 and not a party to the within action.  My business address is 504 Redwood Blvd., Suite 223 Novato, CA 94947.

On 01/30/2018, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

  Summons, Complaint, Civil Case Cover Sheet, Notice To Plaintiff, ADR Packet

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Los Angeles, California, addressed as follows:

  Law Offices of Les Zieve

  LES ZIEVE

  30 Corporate Park, 450

  Irvine, CA 92606

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 107.15

|  | I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 01/30/2018 at Los Angeles, California. |
|---|---|
| One Legal - 194-Marin<br>504 Redwood Blvd #223<br>Novato, CA 94947 | Jee Jean Suarez<br>OL# 11682687 |

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Mark Lapham, 146352<br>Law Offices of Mark W. Lapham<br>751 Diablo Rd.<br>Danville, CA 94526<br>TELEPHONE NO.: (707) 9387754<br>ATTORNEY FOR *(Name)*: Plaintiff | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**02/01/2018**<br>Clerk of the Court<br>BY:NEYL WEBB<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
Superior Court of California, San Francisco County
400 McAllister Street
San Francisco, CA 94102

PLAINTIFF/PETITIONER: ISIDORA G. CERALDE, ET. AL.

DEFENDANT/RESPONDENT: Specialized Loan Servicing, LLC, ET. AL.

| PROOF OF SERVICE OF SUMMONS | CASE NUMBER:<br>CGC-18-563830 |
|---|---|
| | Ref. No. or File No.:<br>None |

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:   Summons, Complaint, Civil Case Cover Sheet, Notice To Plaintiff, ADR Packet

3. a. Party served:  Mortgage Electronic Registration Systems, Inc.

   b. Person Served: ALEX ACUNA - Genpact Registered Agent, Inc. - Person Authorized to Accept Service of Process

4. Address where the party was served:   15420 Laguna Canyon Road, 100
   Irvine, CA 92618
5. I served the party
   a. by personal service.   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 01/26/2018       (2) at  (time): 10:50AM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

Mortgage Electronic Registration Systems, Inc.
under: CCP 416.10 (corporation)

7. Person who served papers
   a. Name:    Paul Garcia
   b. Address:   One Legal - 194-Marin
              504 Redwood Blvd #223
              Novato, CA 94947

   c. Telephone    415-491-0606
   d. The fee for service was: $ 69.95
   e. I am:
      (3) registered California process server.
         (i)  Employee or independent contractor.
         (ii) Registration No.:2012070781
         (iii) County: LOS ANGELES
8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
   Date: 01/30/2018

                                                                      *Paul Garcia*

| Paul Garcia | |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS) | (SIGNATURE) |

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11682688

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Mark Lapham, 146352<br>Law Offices of Mark W. Lapham<br>751 Diablo Rd.<br>Danville, CA 94526<br>TELEPHONE NO.: (707) 9387754<br>ATTORNEY FOR *(Name)*: Plaintiff | FOR COURT USE ONLY<br><br>ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,<br>County of San Francisco*<br>**02/02/2018**<br>Clerk of the Court<br>BY:YOLANDA TABO-RAMII<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
Superior Court of California, San Francisco County
400 McAllister Street
San Francisco, CA 94102

| | |
|---|---|
| PLAINTIFF/PETITIONER: ISIDORA G. CERALDE, ET. AL.<br><br>DEFENDANT/RESPONDENT: Specialized Loan Servicing, LLC, ET. AL. | CASE NUMBER:<br>CGC-18-563830 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:    Complaint, Civil Case Cover Sheet, Summons, Alternative Dispute Resolution Packet

**BY FAX**

3. a. Party served:  Specialized Loan Servicing, LLC

   b. Person Served: Capitol Corporate Services, Inc.-Mike Mirrione - Person Authorized to Accept Service of Proc

4. Address where the party was served:  36 S. 18th  Ave. Suite D
   Brighton, CO 80601

5. I served the party
   a. by personal service. I personally delivered the documents listed in Item 2 to the party or person authorized to
      receive service of process for the party (1) on (date): 01/30/2018        (2) at  (time): 3:09PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:



   d. on behalf of:

Specialized Loan Servicing, LLC
under: Other: Limited Liability Company

7.  Person who served papers
    a. Name:     Mike Mirrione
    b. Address:    One Legal - 194-Marin
                   504 Redwood Blvd #223
                   Novato, CA 94947

    c. Telephone number: 415-491-0606
    d. The fee for service was: $ 169.95
    e I am:
       (1)  Not a registered California process server.


8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Date: 01/31/2018

_____
Mike Mirrione
(NAME OF PERSON WHO SERVED PAPERS)                                      (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11682686